**Donald ROHAN, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 96–1803.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1996.

Decided Oct. 22, 1996.

Frederick J. Daley, Marcie E. Goldbloom, Eric Schnaufer (argued), Chicago, IL, for Plaintiff–Appellant.

Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, Julie A. Flanagan (argued), Department of Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Donald Rohan sought judicial review of the defendant Commissioner's predecessor's finding that plaintiff was not entitled to disability insurance benefits under the Social Security Act (42 U.S.C. §§ 416(i), 423(d)).[1] In January 1996, the district court granted the Commissioner's motion for summary judgment, resulting in this appeal.

In September 1990, plaintiff applied for disability insurance benefits on the ground that he had been disabled since June 30, 1989, because of a back condition. This application was ultimately denied in April 1991. Plaintiff reapplied for disability insurance benefits in August 1992, claiming depression and again a back condition. This application was also ultimately denied, and plaintiff requested an administrative hearing.

In February 1994, plaintiff testified at a hearing before Administrative Law Judge James A. Horn. His wife also testified. In June 1994, the ALJ reopened the agency's denial of plaintiff's original application. He decided that plaintiff was not entitled to a period of disability or disability insurance benefits under the Social Security Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. As a result, in January 1995 plaintiff brought this suit seeking review of the adverse decision of the Commissioner. We reverse and remand.

## Facts

When the ALJ issued his decision, plaintiff was 46 years old. He had a high school education and some vocational training and worked as a carpenter until he injured his back at work in June 1989. He had previously worked as a maintenance man.

As to his physical condition, a month after plaintiff injured his back, magnetic resonance imaging revealed a large herniated disk, a left extra foraminal disk protrusion and degeneration. In December 1989, Dr. Scott Mox, his treating physician, reported that Rohan's back condition had not improved significantly, so that he could not return to work as a carpenter and might need surgery.

In January 1990, Dr. Thomas McNeill examined plaintiff and found that his straight leg raising test was positive on the right, he had difficulty dressing and had a herniated disk. Work hardening was recommended. Subsequently, plaintiff enrolled in a work hardening program and was considered capable of exertionally light work although his back was termed mechanically unsound.

In September 1992, Dr. Samuel Goldman examined plaintiff and found that his ability to bend his back was significantly restricted and that his low back pain was secondary to a herniated disk.

As to his mental condition, plaintiff visited psychiatrist Dr. Michael Shapiro in March 1992 and complained of depression due to his back injuries. Plaintiff said that therefore he could not find a job and could neither stand nor sit very long. He also complained of sleep problems and dreams about Viet Nam. Dr. Shapiro diagnosed a major depressive disorder and ordered objective tests. In April 1992, Dr. Shapiro prescribed Prozac for plaintiff's depression. Dr. Shapiro's monthly notes recorded plaintiff's anger, difficulties relating to others including his wife,

---

1. The administrative decision adverse to plaintiff was by the Commissioner's predecessor, the Secretary of Health and Human Services, Donna Shalala. The Social Security Independence and Program Improvements Act of 1994, P.L. No. 103–296, 108 Stat. 1464, became effective during the pendency of this litigation before the district court. Pursuant to Sections 106(d) and 107 of the Act, Shirley S. Chater, Commissioner of Social Security, has been substituted for Secretary Shalala as the defendant in this action. For ease of exposition, we refer to the Commissioner throughout this opinion.

physical complaints, sleep disturbance and financial concerns but noted that he was engaging in the repair and sale of lawn mowers.

In September 1992, Dr. Shapiro reported that plaintiff's daily activities were very limited, he had a constricted field of interest, was withdrawn and was more irritable with his wife. However, the psychiatrist stated that plaintiff's anti-depressant therapy resulted in mild improvement but that still he had a major depressive disorder.

In December 1992, Dr. Shapiro completed a Psychiatric Review Technique Form revealing that plaintiff had signs of depression, anxiety and personality disorder. This form also reported that plaintiff's daily activities and social functioning were markedly restricted and that he had deficiency in concentration, persistence or pace, with repeated episodes of deterioration or decompensation at work or in a work-related setting. On the Mental Residual Functional Capacity Evaluation, the doctor indicated that plaintiff's abilities to meet various cognitive, psychological and social demands of work were moderately to markedly restricted, that he could not handle pressure, and that he becomes angry and explosive.

In April 1993, Dr. Shapiro wrote a letter to a Palatine, Illinois, law firm stating that plaintiff's condition was debilitating and limiting and that his inability to function, chronic pain and lack of alternative life style contributed to his depressed state. He concluded that plaintiff was totally disabled by a combination of his physical and psychiatric condition. In January 1994, he reported to the Illinois Department of Public Aid that plaintiff could not function without his wife's assistance, had thoughts of suicide and had a major depressive disorder. He also characterized plaintiff's condition as "severe."

At his hearing before the ALJ, plaintiff testified that he was very depressed because of his inability to work caused by his back condition. He added that pain and depression made it difficult for him to remember

and concentrate and that he was easily upset. He disposed of his guns because his wife was concerned that he might kill himself. He added that he was frequently aggravated and had difficulty concentrating and did not go to a Veterans Administration hospital because he did not think he would be treated there. He said his sessions with Dr. Shapiro were paid for by Public Aid. His wife testified that he was irritable and very depressed with mood swings and difficulty in concentrating, sleeping and relating to others.

### Administrative Law Judge's decision

As noted, in June 1994 the ALJ rendered a decision adverse to plaintiff. The ALJ noted plaintiff's physical disabilities but decided they were not of listing level. He also found that plaintiff's mental impairment was not of listing level of severity because his complaints only centered "around family and financial concerns." He concluded that plaintiff could perform light work and retained "the mental ability to understand, remember, and carry out simple instructions, to respond appropriately to supervision and co-workers and to tolerate routine work pressures in a work setting."

The ALJ placed significance on plaintiff's lack of treatment for his impairments since he was allegedly disabled in June 1989. He noted that Mr. Rohan never had any inpatient treatment and no physical therapy since September 1989. He refused to believe plaintiff's testimony about his physical condition because he had no treatment for it since December 1989, although he could afford medical treatment through an $85,000 workmen's compensation claim settlement. The ALJ also stated that in July 1990, plaintiff was capable of work at the light exertional level and that one of his doctors reported that he was able to perform light work in March 1991. Further, the ALJ interpreted reports from 1989 and 1990 by Doctors Mox and McNeill as only precluding plaintiff from working "at strenuous activity or doing heavy work," causing the ALJ to conclude that Rohan could perform light work.[2]

2. In his decision, the ALJ cited record exhibits 28 and 46 for this conclusion. There is no exhibit 46 in the record. Exhibits 26 and 28 are spinal disorder reports by Dr. McNeill dated October

10, 1990 and March 6, 1991. There is no report by Dr. Mox in the record; however, Exhibit 25 consists of Dr. Mox's treatment notes. Those notes reflect Dr. Mox's impression that plaintiff

The ALJ devoted most of his opinion to Mr. Rohan's alleged mental impairment and concluded that it did not preclude unskilled work activity. The ALJ observed that plaintiff's treating psychiatrist, Dr. Michael Shapiro, found that Mr. Rohan had some depression "largely caused by family and financial concerns." The ALJ added that "given the situational aspect of the claimant's depression," he was unconvinced that it was "of such severity that it would prevent the performance of the mental features of unskilled work." Further, the ALJ's report stated that Dr. Shapiro "never did a mental status examination on the claimant; he simply reported the claimant's alleged symptoms." The ALJ also noted that Dr. Shapiro's notes revealed that in 1992 and 1993 the plaintiff was engaging in an ongoing business "buying lawn mowers, snowmobiles, tractors, and motorcycles, repairing those objects and then selling them."

In refusing to believe that plaintiff's activities were markedly restricted, the ALJ cited plaintiff's ongoing lawn mower repair and sales business in 1992 and 1993. The ALJ also discounted any disabling pain of plaintiff since he did not take any prescription medication until the eve of the hearing despite his complaints of disabling pain. The ALJ also concluded that Mrs. Rohan's testimony was inconsistent with the record and therefore entitled to little weight. In sum, he found that plaintiff was not disabled.

The ALJ added that he disregarded Dr. Shapiro's opinions on the ground that only the Commissioner can determine the issue of whether a claimant is legally disabled and entitled to benefits. He added that Dr. Shapiro's opinions were "unreasoned and undocumented" and "based only upon subjectively reported symptoms."

The ALJ concluded his opinion with the following findings:

1. The claimant has not attained retirement age.
2. The claimant satisfied the disability insured status requirements of the Social Security Act on June 30, 1989, and he continues to satisfy those requirements at least through the date of this decision.
3. The claimant has not engaged in substantial gainful activities since June 30, 1989.
4. The claimant has a vertebrogenic disorder of the lumbar spine and situational depression. These impairments are not of listing level of severity.
5. The claimant's testimony concerning his symptoms and restrictions was not credible and the testimony was inconsistent with and unsupported by the objective-clinical findings and other evidence of record considered as a whole.
6. The claimant has a residual functional capacity to perform full range of light work; that is, he can walk and stand six hours a day, occasionally bend and stoop, frequently lift and carry objects weighing 10 pounds or less; occasionally lift and carry objects weighing 20 pounds or less, can understand, remember, and carry out simple instructions, can respond appropriately to supervision and co-workers, and can tolerate routine work pressures in a work setting.
7. The claimant is unable to perform his past relevant work as a carpenter.
8. The claimant is a younger individual with a high school education. It is immaterial whether his past work was skilled and whether he possesses past transferrable work skills.
9. Vocational rules 202.20 and 202.22 apply and direct a finding that the claimant is not disabled.
10. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

would not be able to return to his former construction work, but if he improves he may consider gradually returning to some light duty work.

The ALJ's decision misspells the names of the various doctors involved in these proceedings.

### District Court's opinion

In granting defendant's motion for summary judgment, Judge Norgle summarized the findings of the administrative law judge and concluded that the record provided substantial evidence for those findings. He stated that plaintiff's impairment did not satisfy the relevant affective disorder listing requirements,[3] namely, (1) a marked restriction of daily living activity, (2) difficulty in social functioning, (3) deficiency of pace, concentration, or persistence which results in failure to timely complete tasks, and (4) repeated occasions of decompensation or deterioration in work-like settings.

After summarizing the findings of the ALJ that were adverse to plaintiff (App. 18–20), the district judge noted that the ALJ had applied the Medical–Vocational Guidelines (20 C.F.R. § 404.1569) in determining that plaintiff could perform a significant number of jobs. Judge Norgle then pointed out:

> The ALJ also compared the non-exertional demands of light work to Rohan's non-exertional limitations. He found that Rohan can tolerate routine job pressures in a work environment and that Rohan has the mental capacity to remember, understand, and perform simple instructions and to deal appropriately with supervisors and co-workers. Accordingly, *after considering* exertional and non-exertional limitations, the ALJ found Rohan not disabled.

App. 21.

In closing the opinion below, the district judge refused to disturb the ALJ's credibility findings because they were not "patently wrong" under *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir.1994). Defendant's motion for summary judgment was granted because the ALJ's decision was not considered contrary to the substantial weight of the evidence (App. 23). We disagree.

### ANALYSIS

■ The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence. Accordingly, we will reverse the Commissioner's findings only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir.1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. See *e.g. Herron v. Shalala*, 19 F.3d 329, 334 n. 10 (7th Cir.1994); *Scivally*, 966 F.2d at 1076; *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990), certiorari denied, 502 U.S. 901, 112 S.Ct. 278, 116 L.Ed.2d 230.

■ In this case, as in *Scivally and Wilder v. Chater*, 64 F.3d 335 (7th Cir.1995), the ALJ improperly disregarded the most recent objective evidence of plaintiff's limitations submitted by Dr. Shapiro. In this regard, it is quite evident from our review of the record and the ALJ's decision that he independently evaluated the evidence in this case and improperly substituted his judgment for that of Dr. Shapiro. Without expressly relying on any medical evidence or authority, the ALJ determined that Mr. Rohan's efforts at engaging in a small machine repair/resale business were incompatible with a diagnosis of major depression and Dr. Shapiro's conclusions regarding Rohan's functional abilities. This is precisely the same scenario we confronted in *Wilder*, where the ALJ believed that the claimant's ability to do certain things (*e.g.* work as a security guard and carry a gun) was inconsistent with a diagnosis of depression. This is not a permissible ground upon which the ALJ may rely. As a panel of this Court explained in *Wilder*:

> Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. [Wilder] is

---

**3.** See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

entitled to a decision based on the record rather than a hunch. The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture.

64 F.3d at 337–338. As far as discernible from this record, the ALJ simply indulged his own lay view of depression for that of Dr. Shapiro. Reports of the other consulting physicians were simply ignored. While we do not require a written evaluation of every piece of evidence, an ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (per curiam) (quoting *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985)). Being unable to discern how—apart from substituting his own judgment for that of the medical witnesses—the ALJ reached his determination regarding the degree of Rohan's impairments, we must reverse and remand for further proceedings. We recommend that the Commissioner assign this case to a different ALJ for all further proceedings.

The judgment of the district court is reversed and the case is remanded with directions to return the action to the Commissioner for further proceedings.

REVERSED AND REMANDED.