**Patricia A. BROWN, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

No. Civ. 3–97–CV–90037.

United States District Court, S.D. Iowa, Davenport Division.

Jan. 16, 1998.

bound by the agreement are to be interpreted to bind the agency at issue.").

1. President Clinton appointed Kenneth S. Apfel to serve as Acting Commissioner of Social Secu-

rity, effective September, 29, 1997, to succeed John J. Callahan. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.

William Bauer, Burlington, IA, for Plaintiff.

Gary L. Hayward, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge. .

Plaintiff, Patricia A. Brown, filed a Complaint in this Court on February 19, 1997, seeking review of the Commissioner's decision to deny her claim for a period of disability and disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq.. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed and the Commissioner is ordered to award benefits.

## BACKGROUND

Plaintiff filed an application for disability benefits on May 20, 1994. Her application was denied initially and upon reconsideration. After a hearing, Administrative Law Judge Jean M. Ingrassia (ALJ) issued a decision on March, 18, 1996, denying benefits. On December 13, 1996, the Appeals Council denied Plaintiff's request for review. Plaintiff filed this Complaint on February 19, 1997.

## STANDARD OF REVIEW

When reviewing a denial of benefits, we will uphold the Secretary's final decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Whitehouse v. Sullivan,* 949 F.2d 1005, 1006 (8th Cir.1991). Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion. *Whitehouse,* 949 F.2d at 1006 (Citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In assessing the substantiality of the evidence, we must consider evidence that detracts from the Secretary's decision as well as evidence that supports it. *Locher,* 968 F.2d at 727 (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). We may not, however, reverse the Secretary's decision "merely because substantial evidence would have supported an opposite decision." *Id.* (quoting *Baker,* 730 F.2d at 1150).

*Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993). In making this inquiry, a court should neither consider a claim de novo nor abdicate its function to carefully analyze the entire record. *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975).

In *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987) then Chief Judge Donald P. Lay explained the difference between the "substantial evidence" review and "substantial evidence on the record as a whole" review. Judge Lay wrote:

In the review of an administrative decision, "[T]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.

As will be shown below, although there is some substantial evidence in the record to support the ALJ's decision, when the evidence which detracts from that decision is taken into account, the ALJ's decision is not supported by *substantial evidence on the record as a whole.*

## ALJ'S FINDINGS

Plaintiff last met the earnings requirement of the Act at the end of December, 1997. Tr. at 127. That is to say, Plaintiff must prove that she became disabled on or before that date. *Grebenick v. Chater,* 121 F.3d 1193, 1196 (8th Cir.1997). The ALJ, following the sequential evaluation found at 20 C.F.R. § 404.1520, found, at the first step, that Plaintiff has not engaged in substantial gainful activity since October 30, 1992. At the second step, the ALJ found that Plaintiff has severe impairments: dysthymic disorder, degenerative joint disease, and hypertension. At the third step, the ALJ found that none of Plaintiff's impairments are severe enough to meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Tr. at 24. At the fourth step, the ALJ found that Plaintiff is able to do her past relevant work as a general office helper. Tr. at 25.

## DISCUSSION

### PAST RELEVANT WORK

█ The ALJ found that Plaintiff is able to do her past relevant work as a general office helper, and therefore was not disabled. Plaintiff argues that the record does not support a finding that Plaintiff worked as a general office helper of flee helper during the 15 year period relevant to this case. The Court agrees. In *Groeper v. Sullivan,* 932 F.2d 1234, 1238–39 (8th Cir.1991), the Court wrote:

This court has held, in accord with Ruling 82–62, that an ALJ has an obligation to "fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he

determines that she is able to perform her past relevant work." *Nimick v. Secretary of Health and Human Servs.,* 887 F.2d 864, 866 (8th Cir.1989). Accord *Kirby,* 923 F.2d at 1326–27. The ALJ's failure to fulfill this obligation requires reversal. *Id.* at 1327.

\* \* \*

The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work.... A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his past work. *Id.* at 1327.

In the case at bar, the record contains no evidence, whatsoever, to support a finding that Plaintiff has *ever* worked as a general office helper, let alone within the last 15 years. Plaintiff, in a list of jobs she had done in the last 15 years, stated that between 1980 and 1984, she had worked at several jobs at which her duties were "clerical". Tr. at 248–49. In his report of September 15, 1994, Prasad Mikkilineni, M.D., noted that Plaintiff had "worked as a key punch operator at different places". Tr. at 175. No other description of Plaintiff's clerical duties appears in the record. The Dictionary of Occupational Titles describes the job of office helper (DOT# 239.567–010) which was identified by the vocational expert (Tr. at 253):

Performs any combination of [the] following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or time cards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE

(CLERICAL) 230.663–010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

There is no evidence that Plaintiff did any of the duties required of an Office Helper in any of her past work. At the hearing, the ALJ questioned Plaintiff about her work as a buss person at the "county poor farm". Tr. at 40. Plaintiff was questioned about her work as a machine operator. Tr. at 40–41. Plaintiff was questioned about her work as a production worker at Midwest Biscuit. Tr. at 41. She was questioned about the work as a home health aide. Tr. at 41–42. Plaintiff was also asked to describe her work as a production line worker at Lamont Limited. Tr. at 42–43. Nowhere, however, was Plaintiff asked to describe her "clerical" work. Because the ALJ did not fully develop the record regarding the nature of Plaintiff's past work, the decision is not supported by substantial evidence on the record as a whole and requires reversal. The vocational expert testified that all of the jobs, about which the record was developed, would be precluded because of the exertional limitations in the ALJ's hypothetical question which is discussed below.

## PLAINTIFF'S ABILITY TO
## DO OTHER WORK

■ At the hearing, the ALJ asked the vocational expert to consider the following hypothetical:

Mr. Johnson, we have a 53–year–old individual with a 12th grade education. Work activity as set out in Exhibit 50. She's had examinations by Dr. Beatty in September of '94.... And again—and again in February of '95, and it was Dr. Beatty's opinion that claimant can lift about 30 pounds, stand, move about, walk and sit for eight hours.... I think that's a little probably generous. She could probably sit for six hours in an eight-hour day, but she would need to alternate between sitting and standing every hour. She should occasion-

ally bend and stoop, twist, squat, kneel, crawl and climb. There's no indication in the record that she would have any problems with gross or fine manipulation.... In addition to what we've described as her physical problems, using both Dr. Beatty and the recent examinations at the University of Iowa, which we have at Exhibit 46 from January of '96. She's also been treated for a dysthymic disorder, situational depression due to family problems and also money problems. They've described her as having hysterical reaction. I would say she should probably not do complex technical work activity. There's no indication that she has any memory or concentration problems that have been psychology documented. Would she be able to perform any of her past work activity.

Tr. at 55–57. It was in response to this hypothetical question that the vocational expert testified that Plaintiff would be able to do her past work as an office helper. Tr. at 57. As stated above, however, there is no evidence to support a finding that Plaintiff has ever worked in such a job. The vocational expert said that all of Plaintiff's other jobs, i.e. the ones that were described in detail during testimony, would be precluded because of the exertional limitations of standing and lifting.

■ Since Plaintiff is unable to do any of her past relevant work, the burden of proof now shifts to the Commissioner to prove, first of all, with medical evidence that Plaintiff has a residual functional capacity to do other kinds of work, and secondly, that other work exists in the national economy that Plaintiff is able to do in her impaired condition. *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc); *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir. 1983); *Soth v. Shalala,* 827 F.Supp. 1415, 1417 (S.D.Iowa 1993); *Davis v. Callahan,* 985 F.Supp. 913 (S.D.Iowa 1997) and cases cited therein.

The physical restrictions in the ALJ's hypothetical are supported, as she stated, by the opinion of Dr. Bedi, whose medical specialties include pulmonary diseases and internal medicine, (Tr. at 222) who wrote September 22, 1994: "In summary I do not believe

the patient has a disability of any nature." Tr. at 179. On February 21, 1995, it was Dr. Bedi's opinion that Plaintiff had "improved significantly" since his previous report. Tr. at 194. Dr. Bedi's opinion is substantial evidence which supports the ALJ's decision. The Court, however, must also consider the evidence in the record which detracts from the weight of the evidence which supports the decision. *Gavin v. Heckler*, 811 F.2d at 1199.

The problem with the ALJ's hypothetical is that it grossly understates Plaintiff's mental impairments and limitations. On September 16, 1994, Prasad Mikkilineni, M.D., a psychiatrist, stated: "Patient at this time cannot remember and understand instructions. Her concentrating ability has been impaired. She needs to be treated under the care of a psychiatrist with antidepressant medications. . . . I hope this information will assist you in this disability determination." Tr. at 196.

On November 9, 1995 another psychiatrist, Bernardo G. Pineda, M.D. wrote: "The pt. is not really capable of working." Tr. at 229. Dr. Pineda rated Plaintiffs GAF (Global Assessment of Functioning): "GAF the best of the current year 50, at the present time about 30–40." *Id.* A GAF of 50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational or school functioning** (e.g., no friends, unable to keep a job)." (Emphasis in original). American Psychiatric Association Diagnostic and Statistical Manual of Mental disorders Fourth Edition (DSM–IV) 1994 at page 32. A GAF of 40 indicates: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" (Emphasis in original). *Id.* A GAF of 30 indicates: "**Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication**

**or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends)." (Emphasis in original). *Id.* On August 17, 1995, Dr. Pineda rated Plaintiff's GAF at 50. Tr. at 231.

On March 7, 1995, a report from Kevin Kimata, M.D., a neurologist at the University of Iowa Hospitals and Clinics, wrote that an MMPI–2 test "indicated depressive features, a strong tendency for psychological distress to be expressed via somatic and cognitive symptomatology, and an inclination to use medical symptoms to manipulate her environment." Tr. at 240.

On October 12, 1994, Sue McNeil, Ed.D., a licensed psychologist, opined that Plaintiff is moderately limited in her ability to remember locations and work-like procedures, the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 96–98. On the same day, Herbert L. Notch, Ph.D., stated, on a Psychiatric Review Technique form (Tr. at 76–84) that Plaintiff, among other things, often has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Tr. at 83.

None of the limitations from Plaintiff's treating physicians, nor from the psychologists who reviewed the medical records, were included in the ALJ's hypothetical. In fact, the vocational expert was told to ignore any limitations resulting from Plaintiff's mental impairments other than that she should avoid complex technical work.

It is well settled law that, in order to constitute substantial evidence supporting the denial of benefits, hypothetical questions must relate, with precision, the claimant's impairments and limitations. *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir.1990). It is also well settled law that it is error for the ALJ to substitute her judgment for that of the physicians. *Ness* at 435. In *Rohan v.*

*Chater*, 98 F.3d 966, 970 (7th Cir.1996), the Court wrote:

> The Commissioner's determination must be based on testimony and medical evidence in the record. And as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.... As far as discernible from this record, the ALJ simply indulged his own lay view of depression for that of Dr. Shapiro. Reports of the other consulting physicians were simply ignored.

(Citations omitted). In *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir.1995) the Court wrote that health professionals, in particular psychiatrists, not lawyers or judges, are the experts on mental illness. In *Easter v. Bowen*, 867 F.2d 1128, 1130 and 1131 (8th Cir. 1989) Judge, now Chief Judge, Richard Arnold chastised the ALJ for disregarding the opinions of the treating and examining doctors and for forming his own conclusions regarding the severity of the claimant's mental impairments

## DECISION

The decision of the ALJ that Plaintiff is able to return to her past relevant work is not supported by substantial evidence on the record as a whole. The burden of proof was on the Commissioner to prove with medical evidence that Plaintiff has a residual functional capacity for other work, and that other work, in fact, exists that Plaintiff is able to do. It is the holding of this Court that the record does not support a finding that Plaintiff has a residual functional capacity for other work. Dr. Pineda stated, point blank: "The pt. is not really capable of working." Tr. at 229. The MMPI showed that Plaintiff has "a strong tendency for psychological distress to be expressed via somatic and cognitive symptomatology". Tr. at 240. A psychologist at disability determination services opined that Plaintiff would often fail to complete tasks in a timely manner because of deficiencies of concentration, persistence or pace. Tr. at 83. Another psychologist at disability determination services opined that Plaintiff was moderately limited in her ability to complete a normal work day or work week without an unreasonable number and length

of rest periods. Tr. at 97. Thus, the record demonstrates, overwhelmingly, that Plaintiff is disabled and entitled to benefits. In such a circumstance, the Court should, and does in this case, order the Commissioner to award benefits. As Chief Judge Arnold, sitting by designation as a district court, wrote: "[T]here are occasions when the bulk of the evidence is transparently one-sided against the ALJ's decision. In those instances, the reviewing court must reverse the administrative determination on the ground of unreasonableness." *Bradley v. Bowen*, 660 F.Supp. 276, 279 (W.D.Ark. 1987).

Defendants Motion to Affirm the Commissioner's decision is denied. **Plaintiff's Motion To Reverse The Commissioner is granted. The Commissioner is ordered to compute and award Plaintiff the benefits to which she is entitled.**

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993)