**Amos L. WILLIAMS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98 C 2911.**

United States District Court, N.D. Illinois, Eastern Division.

May 6, 1999.

Robert G. White, Chicago, IL, for plaintiff.

Kathryn A. Kelly, Assistant United States Attorney, Chicago, IL, Pamela A. Rolfs, Assistant Regional Counsel, Social Security Administration, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff, diagnosed as mentally retarded, spent twenty-one years moving refrigerators in a warehouse. He now seeks disability benefits claiming a bad back, bad feet and mental impairments. The doctors who examined Plaintiff all supported his claim. However, the Administrative Law Judge ("ALJ") denied it. This Court now reverses.

Plaintiff Amos L. Williams ("Plaintiff" or "Williams") brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security disability benefits and Supplemental Security Income. The ALJ found that under the Social Security Act ("Act"), Williams was not considered disabled under 42 U.S.C. § 1382c(a)(3)(A) and

that he was not entitled to a period of disability insurance under 42 U.S.C. § 416(i) and 42 U.S.C. § 423.

This matter comes before the Court on cross-motions for summary judgment. The issue to be decided is whether substantial evidence in the record supports the ALJ's finding that Williams is not disabled under the Act. For the reasons set forth below, the Court reverses the ALJ's decision and grants summary judgment in favor of Plaintiff.

## I. FACTUAL BACKGROUND

Williams was born on March 4, 1951 and was 46 years old at the time of the ALJ's decision. (R. at 27.) He filed an Application for Disability Insurance Benefits and for Social Security Income on November 9, 1993 alleging that he had been disabled since July 1, 1991. (R. at 27–34, 51.)

### A. Williams' Testimony

Williams worked for General Electric from 1969 through 1990. (R. at 114.) His job duties included moving refrigerators and parts-retrieval, but he ceased this work when the factory at which he was employed closed down. (R. at 114, 185–86.) He worked at National Casting for two weeks in 1992. (R. at 186.) In 1993, Williams filed for disability insurance benefits, claiming he had a disability since 1991, which prevented him from working. (R. at 27.) In Williams' disability report, he claimed his disabling condition was the result of arthritis in his legs, a 1975 gunshot wound, alcohol and drug addiction, high blood pressure, depression, and a back injury. (R. at 51.) According to this report, Williams' disabling condition prevents him from working due to pain and the effects of his substance abuse addictions. (R. at 51.)

According to Williams, his back and side pain prevent him from lifting objects off the ground. (R. at 191.) He also has problems walking and standing because when he does so his legs swell up and his feet begin to hurt. (R. at 191–92.) He believes his foot pain is caused from years of work in a warehouse with concrete floors. (R. at 192.) Though he admits to abusing alcohol, marijuana, and cocaine for almost twenty years, he testified at his hearing that he had been clean and sober for almost two years. (R. at 188.)

### B. Medical Testimony

During the years surrounding Williams' disability application, several doctors examined the claimant. In December of 1993, Dr. James Runke, a medical reviewer at the Illinois Department of Public Aid, diagnosed Williams with hypertension, chronic obstructive pulmonary disorder ("COPD"), and a substance abuse problem. (R. at 108.) The doctor recommended medication for Williams' high blood pressure. (R. at 112.)

Regarding Williams' complaints of leg and foot pain, Dr. Runke found that Williams had a normal range of motion in his joints and that the claimant did not complain of any tenderness, swelling, or stiffness. (R. at 109–10.) However, Dr. Runke stated that Williams had a 20% to 50% reduced capacity to climb, push, and pull and a ten pound weight limitation for repeated lifting. (R. at 112.)

Also on December 28, 1993, Dr. Rochelle Hawkins of the Lake Shore Medical Clinic, Ltd., performed a thirty-five minute consultative examination of Williams. (R. at 115–18.) Plaintiff's physical examination was normal; he had a full range of motion in his spine and joints and had normal manipulation of both his hands. (R. at 116–17.) The doctor found Williams alert and orientated despite his assertion that he drank two or three fifths of alcohol daily and used cocaine and marijuana. (R. at 115, 117.) It was Dr. Hawkins' clinical impression that Williams had fairly "well-controlled" high-blood pressure and a substance abuse problem. (R. at 117.)

In January of 1994, Dr. Donald Henson, Ph.D., on behalf of the State Agency, diagnosed the Plaintiff with a substance abuse

and personality disorder which would limit him from performing skilled work. (R. at 78.)

In February of 1994, the Plaintiff began regular treatment with Dr. Nayanaphatek who treated Williams for hypertension, COPD, arthritis of the back and leg, and for varicose veins. (R. at 145.) The doctor limited Plaintiff's lifting to objects no more than 20 pounds. (R. at 144.)

On June 26, 1996, Plaintiff met with Dr. Claudia Mosier for an intellectual, neuropsychological, and personality assessment to assist in the evaluation of his disability claim. (R. at 126.) Dr. Mosier noted that Williams suffered from mild psychomotor retardation. (R. at 130.) The doctor noted that an intellectual assessment of Williams when he was a child indicated a Standford–Binet (Form L) IQ score which was in the range of mental retardation. (R. at 126.) Dr. Mosier administered the Wechsler Adult Intelligence Scale and determined that Plaintiff had a verbal I.Q. of 68, a performance I.Q. of 67 and a full scale I.Q. of 66, thereby placing him in the mentally retarded range of intellectual ability, in the bottom 1% of others of the same age range. (R. at 131.) Dr. Mosier stated that Plaintiff's IQ tests were consistent with his childhood intellectual testing and that he is functionally illiterate. (R. at 133.) Dr. Mosier diagnosed the claimant as suffering from a cognitive disorder NOS, a reading disorder, and alcohol dependence in sustained remission. (R. at 133.) She diagnosed mental retardation and she determined that Williams met listings. 12.02 and 12.05 of the Listings of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, and that he was unable to successfully perform any type of competitive employment. (R. at 133, 149.)

In July of 1996, the Plaintiff sought treatment from Dr. Jaleel. (R. at 142–43.) Dr. Jaleel imposed a 20–pound lifting restriction. (R. at 142.) Further, the doctor assessed that the Plaintiff had moderate restrictions in climbing, balancing, bending, kneeling, squatting, pushing, and pulling. (R. at 142.) These conclusions were supported, according to Dr. Jaleel, by Plaintiff's medical impairments such as his known hypertension, his bilateral foot problem, and his lower back pain. (R. at 143.)

## II. THE DECISION OF THE ALJ

ALJ James A. Horn found that based upon the evidence, Williams was not disabled. (R. at 12–17.) Under listing 12.05, 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ found that, although Williams met criteria "A", he did not satisfy the rest of the criteria under listing 12.05 as he did not have adaptive deficits or additional and significant physical or mental limitations. (R. at 13–14.) The ALJ then concluded that Williams was able to perform his past relevant work as a factory laborer. (R. at 15.) The Appeals Council subsequently denied Williams' request for a review of the ALJ's decision. (R. at 3.)

## III. THE STANDARD OF REVIEW

■■ Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health and Human Serv.*, 983 F.2d 815, 816 (7th Cir.1993). A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th

Cir.1992); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992).

## IV. ESTABLISHING A DISABILITY

■ Disability insurance benefits are available only to claimants who can establish "disability" under the terms of the Social Security Act. *See Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir.1997). The claimant must show that he is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for at least twelve months, and which renders the claimant unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A). The determination of disability follows a five-step evaluation laid out in the Social Security Regulations: (1) is the claimant presently unemployed? (2) is the claimant's impairment severe? (3) does the impairment meet or equal one of the impairments specified in 20 C.F.R. pt. 404, subpt. P, app. 1? (4) is the claimant unable to perform his past relevant work? and (5) does the claimant's age, education, and past work experience enable him to do other work? 20 C.F.R. § 404.1520; *see also Brewer,* 103 F.3d at 1391.

The claimant bears the burden of establishing a disability in steps one through four of this five-step analysis. *Id.* If the claimant satisfies his burden of proof on each of the first four steps in the analysis, the burden shifts to the Commissioner to show that the claimant has the ability to engage in another type of gainful employment. *Id.*

## V. THE ALJ'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

In the five-step process to establish a disability, only steps three and four are contested in this case. Step three requires the claimant to demonstrate that he or she meets or equals one of the impairments listed in the regulations. *Brewer,* 103 F.3d at 1391. An affirmative finding at this stage leads to an acknowledgment by the Commissioner that the claimant is disabled. *Id.* Step four of the process requires the claimant to demonstrate that due to his residual functioning capacity [1], he is unable to perform his past relevant work. *Id.*

The ALJ concluded that Williams had not satisfied these elements of his disability claim. The Court concludes that the ALJ ignored uncontradicted medical evidence, improperly rejected Williams' testimony, and substituted his own lay view for that of the doctors.

The Seventh Circuit has previously reversed this ALJ for similar errors. *Rohan v. Chater,* 98 F.3d 966, 967 (7th Cir.1996). In *Rohan,* the ALJ concluded, despite a doctor's finding that the plaintiff had depression, anxiety, and personality disorder and was markedly restricted in daily activities, that the plaintiff's depression was not of such a severity that it would prevent the plaintiff from engaging in unskilled work. *Id.* at 968–69. The Seventh Circuit stated that "it is quite evident from our review of the record and the ALJ's decision that he independently evaluated the evidence in this case and improperly substituted his judgment for that of Dr. Shapiro." *Id.* at 970. In reversing, the court also noted that "[r]eports of the other consulting physicians were simply ignored." *Id.* at 971. Based upon the similarities of the ALJ's

---

1. Residual functional capacity is defined as that which an applicant can still do despite physical and mental limitations imposed by his impairments which affect what he can do in a work setting. 20 C.F.R. § 404.1545(a).

decision in the present case to that in *Rohan,* this Court finds that the ALJ's decision is not supported by substantial evidence in the record and is incorrect.

### A. The Claimant Meets Listing 12.05(C)

■ Plaintiff's primary argument is that the ALJ erred in finding that he did not meet the requirements of listing 12.05(C) on mental retardation. 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff bears the burden of proving he meets all of the listing requirements. *Scott v. Sullivan,* 898 F.2d 519, 523 (7th Cir.1990). To meet the requirements of listing 12.05(C), plaintiff had to prove that he had (1) a valid IQ score of 60 through 70; (2) deficits in adaptive behavior that initially manifested before the age of 22; and (3) another physical or mental impairment that imposed additional and significant work-related limitations of function. *Id.* When determining whether an individual meets a listing, the agency strictly adheres to the listed criteria, because an individual who meets a listing is presumed disabled. In such a case, the agency inquires no further into the severity of the individual's symptoms or his functional abilities, age, education, or work history. *See* 20 C.F.R. §§ 404.1520(d), 404.1525.

■ The ALJ agrees that the claimant satisfies the IQ requirement of 12.05(C) and that this IQ manifested itself before claimant was 22. (R. at 13.) However, the ALJ found that there was "no showing of additional significant or physical or mental limitations." (R. at 13.) The ALJ's conclusion is not supported by the record which reveals Williams had both significant physical and other mental impairments that satisfy the listing requirement in step three.

#### 1. Physical Limitation

The medical evidence shows that Williams suffered from severe back and foot pain that posed an additional limitation in his work-related functions. Several physicians examined the claimant. Dr. James Runke, a medical reviewer at the Illinois Department of Public Aid diagnosed Williams with hypertension, a substance abuse problem, chronic obstructive pulmonary disorder, and limited Williams to lifting no more than ten pounds. (R. at 112.) He also noted that the claimant had a 20% reduction in the capacity to perform the activities of daily living. (R. at 112.) Dr. Jaleel examined Williams and assessed him with low back pain and limited plaintiff's lifting to no more than 20 pounds. (R. at 142–43.) Dr. Jaleel prescribed medications for his pain, such as Ibuprofen 800 and noted limitations in the range of motion of the back, paraspinal muscle spasms, and a positive straight leg raise testing at 50 degrees. (R. at 160–61.) Williams' other treating physician, Dr. Nayanaphatek, diagnosed him with hypertension and arthritis of the back and leg and limited Williams to lifting no more than 20 pounds. (R. at 144–45.)

Despite the fact that these three physicians, two of whom were the Plaintiff's treating physicians, substantially limited Williams' capacity to lift, the ALJ nonetheless concluded that the claimant had no exertional limitations that qualify as a disabling condition. (R. at 15–16.) The ALJ refuted the degree of severity found by Dr. Jaleel because this "limitation was not consistent with his treatment notes." (R. at 16.) However, the treatment notes to which the ALJ refers prescribe to Williams the pain medication Ibuprofen. (R. at 144–5, 160.) The ALJ did not even acknowledge Dr. Runke's assessment of Williams. The ALJ rejected Dr. Nayanaphatek's assessment because it was "unreasoned and undocumented" and because the treatment records had not been produced. (R. at 16.)

In so doing, the ALJ did not properly articulate his rationale for rejecting and refuting certain evidence in the record. As such, he has failed to meet the minimal articulation standard required of an ALJ:

An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required ... [But] an ALJ need not provide a complete written evaluation of every piece of testimony and evidence.

*Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir.1995). Consequently, the ALJ was required to provide at least some statement to indicate why he completely ignored the assessments of Dr. Runke, which he failed to do. With regard to his rejection of Dr. Jaleel's finding of severity due to its inconsistency with the treatment notes, the ALJ's conclusion appears to be contradicted by the very record cite to which he refers. The treatment notes which he found to be inconsistent are in fact consistent with someone who is treating a patient with a back condition because pain medication was prescribed.

One of the grounds that the ALJ provided as the basis of his decision was the fact that Dr. Jaleel had only documented one complaint of back pain by the Plaintiff in early August, 1996. (R. at 15.) However, this can be explained by the treatment that Dr. Jaleel provided for plaintiff's pain. At plaintiff's second visit to Dr. Jaleel, he prescribed pain medication in the form of Ibuprofen 800. (R. at 160.)

In reaching his conclusion of no physical limitations, the ALJ also relies on Dr. Hawkins' assessment of the Plaintiff conducted in 1993, which contained no diagnosis of a back condition. (R. at 15, 115–17.) However, this consultation lasted a mere 35 minutes. (R. at 115.) The other evidence, consisting of over twenty separate office visits by the Plaintiff, points to a conclusion that Plaintiff did suffer physical limitations. The ALJ failed to reconcile this evidence with his finding of no physical limitations and, consequently, the ALJ improperly rejected this evidence. The Court reverses the ALJ's conclusion that

there is no significant physical limitation as described in 12.05(C) of the listings because the record clearly reveals that Plaintiff had severe limitations.

## 2. Mental Limitation

The medical evidence shows that Williams had a cognitive disorder that posed an additional limitation in his work-related functions. Dr. Mosier diagnosed Williams with a cognitive disorder, a reading disorder, and alcohol dependence in sustained remission in her 1996 report. (R. at 133.) The ALJ did not discuss this in his analysis of 12.05(C) and when he concludes that Williams did not have any "additional ... mental limitations" accompanying his low IQ scores.

Not only did the ALJ reject the only medical evidence relating to this subject, he then assessed the Plaintiff's cognitive disorders himself by analyzing Williams daily activities. "The fact that the claimant worked regularly and continuously at the same job for 21 years (and a job that was arguably semi-skilled), raised a family and has ... activities of daily living and social functioning represents an individual whose cognitive disorder is not at listing level severity." (R. at 14.) However the ALJ cannot "succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990). In *Schmidt*, the Seventh Circuit disagreed with an ALJ's conclusion that a plaintiff could work because he played handball. *Id.* at 118–19. "Lay intuitions about medical phenomena are often wrong." *Id.* By rejecting the medical evidence in favor of his own lay diagnosis, playing doctor is exactly what the ALJ in the present case did. It is not for the ALJ to conclude, based solely upon a claimant's abilities to engage in certain limited activities, that that claimant is not disabled.

Further, the ALJ "did not take into account the opinions expressed on the psychiatric review technique form" because he reasoned that "the opinion that one is disabled is one that is reserved for the com-

missioner of Social Security." (R. at 16.) The ALJ applies circular logic here. The ALJ is using the Social Security regulation, which provides for the Commissioner to make the ultimate decision of a disability, to justify his rejection of medical evidence that is contrary to his conclusion. The Seventh Circuit in *Rohan v. Chater*, 98 F.3d 966 (7th Cir.1996), disregarded similar logic. *Id.* at 969–70. The regulation only allows the ALJ to make a decision. The regulation doesn't justify the rejection of medical evidence which points to a decision contrary to the ALJ's simply because the ALJ is vested with final decision-making authority. Consequently, the ALJ's reasoning for rejecting the psychiatric review technique form is faulty and does not meet the minimum articulation requirement of an ALJ. *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir.1995).

### B. The Claimant Cannot Return To His Past Relevant Work

 There is abundant evidence in the record to support a finding that Williams cannot return to his past relevant work as a warehouse laborer. Despite the evidence in the record limiting Plaintiff to lifting no more than twenty pounds due to a debilitating foot and back condition, the ALJ found that Plaintiff could return to his job, which required him to lift up to 100 pounds. (R. at 15.) As noted earlier, the ALJ improperly rejected the medical testimony which establishes that Williams is physically limited. For the same reasons the evidence supports a finding that Williams had a significant limitation under the 12.05(C) analysis, these physical limitations impose too great a restriction on the claimant for him to return to work. Three physicians found that the Plaintiff could not lift more than 20 pounds. The ALJ was not free to substitute his judgment for those of the doctors. *Rohan*, 98 F.3d at 970–71.

### VI. CONCLUSION

For the foregoing reasons, **Plaintiff's motion for summary judgment is grant**ed and Defendant's motion for summary judgment is denied, and the case is reversed and remanded to the Commissioner for the award of disability benefits to plaintiff, Amos L. Williams, consistent with this decision.