James P. JONES, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART,
Defendant–Appellee.

No. 02–2464.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 18, 2002.

Decided Jan. 17, 2003.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

ORDER

James P. Jones applied for disability benefits, claiming that herniated discs and a pinched nerve caused him severe back and leg pain and prevented him from working. After the Social Security Administration denied his application, Jones requested a hearing before an administrative law judge, who concluded that Jones

was not disabled. The ALJ's decision became the final decision of the SSA when its Appeals Council denied Jones' request for review. Jones then appealed to the district court, which affirmed, and he now appeals to us.

Jones worked as a welder and laborer for a company that produces gas cylinders in Paducah, Kentucky. His duties required him to lift heavy objects—weighing up to 75 pounds—and required lots of twisting and turning. In 1996 he was injured on the job. He sought treatment for pain in his back, legs, and groin. A CAT scan revealed a herniated disc. Neurosurgeon Dr. Theodore Davies treated the herniated disc with physical therapy, which Jones completed in April 1997.

Jones returned to work, but in September 1997 he aggravated his back condition on the job. Dr. Davies prescribed additional physical therapy. When Jones experienced back pains and spasms after bending over in his front yard in December, he returned to Dr. Davies. An MRI revealed that Jones still suffered from a herniated disc. Dr. Davies recommended additional physical therapy and told Jones not to return to work, but he did not believe surgery was warranted at that time. When Jones' back problems did not improve by June 1998, Dr. Davies performed back surgery to remove the herniated disc. Jones healed well, resumed physical therapy treatment, and, according to a January 1999 CAT scan, had no recurrent disk herniation. Jones continued to complain of pain in his back and legs, but Dr. Davies did not believe additional surgery would be helpful.

Jones applied for disability benefits in December 1998, claiming that he had been disabled since November 27, 1997, the day he quit work. At his hearing, the ALJ heard testimony from Jones, who gave multiple reasons for not returning to work: he was in constant pain; his medication failed to relieve his pain and made him drowsy; he could not stand for more than 10–15 minutes or sit for more than a half hour at a time; he could walk no more than a half block before his legs became weak and numb; and he had to take 30–45 minute naps once or twice a day.

The ALJ questioned a vocational expert about Jones' ability to work based upon a review of assorted medical reports. Among these reports was an assessment submitted in October 1999 to SSA by Dr. Davies concerning Jones' "Ability To Do Work–Related Activities (Physical)." Dr. Davies' assessment stated that Jones could lift only 10–15 pounds a few times per hour, could stand only 15 minutes at a time and for only a total of one hour a day, could sit only for 30 minutes at a time for a total of 2 to 4 hours per day, and would require a flexible work schedule because he would need several days' rest a month and be frequently absent. The vocational expert also considered an assessment submitted by two consulting physicians which was based solely upon a review of Jones' medical records. That assessment characterized Jones' abilities more optimistically than Dr. Davies', concluding that Jones could lift up to 20 pounds and could stand or sit up to 6 hours a day. The vocational expert testified that Jones would be unable to perform any work if Dr. Davies' assessment and Jones' testimony were accurate, but could perform light duty jobs if the consulting physicians' assessment of Jones' abilities was accurate.

The ALJ applied the five-step analysis outlined by 20 C.F.R. § 404.1520 and determined that 1) Jones was not currently employed; 2) his back was severely impaired; 3) the impairment was not conclusively disabling; 4) he could still perform work that he had performed in the past as a car detailer; and 5) he could perform

other light work jobs available in the national economy. Referring to the vocational expert's testimony, the ALJ found that Jones could perform work as a security guard, laundromat attendant, or motel clerk. The ALJ's decision credited the consulting physicians' assessment over Dr. Davies' because Dr. Davies' assessment was "inconsistent with the physician's own reports of examination and treatment and the objective testing of record," as well as Jones' testimony. The ALJ also discredited Jones' testimony at the hearing because it directly contradicted the allegations of immobilizing pain he made in his application for benefits and therefore "raise[s] a question as to his sincere presentation of his functioning."

Jones appeals the district court's decision affirming the Commissioner's final decision, arguing that the ALJ should have given Dr. Davies' report controlling weight because Dr. Davies was Jones' treating physician, and that the ALJ improperly discredited Jones' testimony.

We reverse the findings of the SSA Commissioner only if they are not supported by substantial evidence or if they result from an error of law. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir.2002). Evidence is substantial if a reasonable mind could accept it as adequate to support a conclusion. *Id.* When reviewing the findings, we do not reweigh the evidence or substitute our judgment for that of the ALJ. *Id.*

Jones first argues that the ALJ erred by not giving controlling weight to the assessment of his treating physician—Dr. Davies—that he is essentially unemployable. Jones argues that the ALJ "played doctor" by substituting his own opinion that Jones was not disabled for that of Dr. Davies.

A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record. *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir.2002). Jones seems to argue that a treating physician's opinion is *always* entitled to controlling weight, citing cases where we held that denying controlling weight to a treating physician's opinion was reversible error. *See, e.g., Clifford v. Apfel*, 227 F.3d 863, 870–71 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir.1996). But Jones' argument mischaracterizes the holdings of those cases. As *Clifford* points out, an ALJ must afford controlling weight to a treating physicians' assessment *only if* it is supported by substantial evidence and there is no inconsistent evidence in the record. *Clifford*, 227 F.3d at 870; *see also Dixon*, 270 F.3d at 1177.

In *Clifford* and *Rohan*, the ALJs rejected treating physicians' opinions despite the absence of any inconsistent evidence, *Clifford*, 227 F.3d at 870–71; *Rohan*, 98 F.3d at 970–71; the ALJ here, by contrast, identified inconsistencies substantiating his decision not to give Dr. Davies' October 1999 assessment controlling weight. The ALJ first noted that Dr. Davies' assessment was "inconsistent with the physician's own reports of examination and treatment and the objective testing of record." Indeed, Dr. Davies claimed in his assessment that a January 1999 CAT scan revealed "extensive scar tissue impinging upon the thecal sac and … nerve root," yet at the time of the CAT scan, Dr. Davies noted that the scan "does not show any … compressive lesions." A radiology report completed by another doctor at the time of the 1999 CAT scan also contradicts Dr. Davies' assessment, describing the results of the scan as being within "normal limits" and the abnormalities near the thecal sac as being only "mild."

The ALJ also properly found that Dr. Davies' assessment was contradicted by "the claimant's actual functioning." For instance, although Dr. Davies' assessment stated that Jones had a severely limited ability to walk and stand, Jones testified at his hearing that he performed various household chores and cared for his young children while his wife was at work and told his physical therapist in December 1998 that he walked as much as a mile every day.

Finally, the ALJ correctly noted that Dr. Davies' assessment was contradicted by the consulting doctors' assessment, which stated that "the claimant can perform a range of light work." Dr. Davies' assessment concluded that Jones could lift only 10–15 pounds, could stand only 15 minutes, could sit only for 30 minutes, and would frequently be absent from work. Yet, relying on the same medical evidence cited in Dr. Davies' report, the consulting physicians concluded that Jones could lift up to 20 pounds and could sit and stand for about 6 hours a day.

Jones argues that the consulting assessment should not be considered contradictory evidence because the qualifications of the physicians who prepared it are unknown, and because the assessment does not take into account medical reports prepared after the assessment was submitted. The arguments are unavailing. First, the SSA requires ALJs to account for assessments submitted by consulting physicians, described by SSA regulations as "highly qualified physicians ... who are experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i); *see also Dixon*, 270 F.3d at 1178 (an ALJ is entitled to believe a consulting physician's assessment over a treating physician's). Second, the medical reports omitted from the consulting physicians' assessment were either irrelevant notes about a knee injury or cumulative of other records that Jones no longer suffered from a herniated disc or pinched nerve.

Jones also argues that the ALJ's decision improperly discredited his reports of disabling symptoms and complaints of pain because he failed to provide "corroborative testimony." Jones argues that the ALJ's call for corroborative testimony violates *Pope v. Shalala*, 998 F.2d 473, 482–86 (7th Cir.1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir.1999), in which this court held an ALJ may not discredit subjective complaints of pain simply because no objective medical evidence supports the complaints. *Id.* at 486.

Jones' argument mischaracterizes the ALJ's decision. The ALJ did not discredit Jones because his testimony was uncorroborated, but rather because it was inconsistent. The ALJ determined that "inconsistencies in [Jones'] statements raise a question as to his sincere presentation of functioning." For instance, the ALJ noted Jones' claim on his application for benefits that he could not wash dishes or vacuum; yet at his hearing Jones stated just the opposite, testifying that he spent all day washing dishes, vacuuming, and caring for his 18–month–old daughter at home so that his wife did not have to. The ALJ found that these activities, which Jones testified kept him very busy, "belie[ ] the sincerity of his statement that he spends most of his time lying down due to pain and drowsiness." An ALJ need not fully credit a claimant's complaints of pain if the ALJ determines that the complaints are not credible. *Pope*, 998 F.2d at 486. An ALJ's credibility determinations are not disturbed on appeal unless they are patently wrong. *Sims*, 309 F.3d at 431. Here, substantial evidence supports the ALJ's conclusion that Jones' testimony was inconsistent

and not credible, and so is not patently wrong.

Jones also argues that just because he does housework does not mean that he is not in pain or disabled. Again, this argument misperceives the ALJ's ruling. The ALJ did not reject Jones' claim of disability because he could do housework; rather, the ALJ discredited Jones' testimony because he contradicted himself in characterizing his abilities.

 Because substantial evidence supports the ALJ's decisions to deny controlling weight to Dr. Davies' assessment and to discredit Jones' testimony, we AFFIRM the judgment of the district court.