**Joseph P. NOVAK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration,[1] Defendant.**

No. 00–C–0064.

United States District Court,
E.D. Wisconsin.

Dec. 28, 2001.

---

1. The caption has been amended to reflect Jo Anne B. Barnhart's November 9, 2001 appointment as Commissioner of the Social Security Administration.

David F. Traver, Milwaukee, WI, for Plaintiff.

Penelope C. Fleming, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Joseph P. Novak, who is presently a sixty-year-old City of Milwaukee resident, brings this action under 42 U.S.C. § 405(g) to obtain judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. Plaintiff applied for benefits on June 27, 1997 alleging chronic disability impairments commencing on January 22, 1997, including non-insulin dependent diabetes mellitus, visual loss, back pain, foot pain, stress and depression. His application was denied, plaintiff appealed and a hearing was held before an administrative law judge ("ALJ"). On September 24, 1998, the ALJ found that plaintiff was not disabled and denied benefits. Plaintiff requested that the Appeals Council review the ALJ's decision, but his request was denied, whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff then commenced the present action, and the matter was assigned to a magistrate judge. The parties, however, did not consent to the magistrate judge's jurisdiction; thus, the magistrate judge could only make a recommendation rather than issue a final decision. 28 U.S.C. § 636(b)(1)(B) & (C). He recommended that the decision of the Commissioner be affirmed. Plaintiff filed objections, and the matter is now before me.

## I. FACTS

### A. Medical Records

Plaintiff consulted Dr. Daniel Jankins on September 9, 1997. Plaintiff reported that he had suffered from back pain for a year, and that he could walk only two to three blocks and one to two flights of stairs at a time. The doctor examined him and concluded that he had diabetes mellitus that was under fair control as the result of medication and a history of vision problems that had been corrected by surgery. Dr. Jankins also found that plaintiff had a history of back pain that was supported by objective findings including marginal spurring at all levels of the spine most pronounced at L4. He opined, however, that plaintiff's subjective complaints somewhat outweighed the objective findings. Dr. Jankins also found that plaintiff was illiterate.

Plaintiff consulted Dr. Jack Spear for an assessment of his mental capacity. Dr. Spear concluded that plaintiff's ability to understand, remember and carry out detailed instructions was markedly limited, and his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited.

Plaintiff was also evaluated by Dr. William Nimmer, a psychologist. In response to questioning, plaintiff reported that he got cramps in his calves that made it difficult to rise from bed, and that sometimes when he bent down he found it difficult to straighten up or walk. He stated that he laid down a lot because of lower back pain. Dr. Nimmer concluded that plaintiff was not mentally retarded, but had low intel-

lectual abilities and was on the borderline, had no psychological disorders, had some vision limitations, complained of episodic low back pain resulting in some functional limitations and had diabetes mellitus.

Plaintiff was also treated periodically at the Rainbow Community Health Center. In March 1998, he complained of suffering from back, leg and chest pains several times a week. He was advised to increase the medication he took for diabetes and to take ibuprofen as needed.

## B. Testimony

Plaintiff testified that between 1985 and 1995 he worked for a Milwaukee company known as Badge Parts, Inc. ("Badge").[2] At the time his sister, Sandra Rodriguez, worked for Badge and she introduced him to the work. The work consisted of affixing stickers to campaign-type buttons for people to pin on. Plaintiff performed this work at home which afforded him flexibility with respect to how long he worked at one time, what hours he worked and when he took breaks.

Plaintiff does not drive, thus, in order to get the buttons to him from Badge, his sister would drive to Badge in her station wagon and pick them up. At Badge, several employees would pick up a barrel weighing several hundred pounds and containing about 15,000 buttons and put it in her car. She would then take the barrel to plaintiff's residence. Because the barrel was too heavy for plaintiff and his sister to lift, they would roll it out of the back of the station wagon into the street. There, plaintiff would empty the contents of the barrel into bags that were light enough to enable him to carry the buttons to his residence. Plaintiff testified that he could "empty it out like four bagsful at that time." (Tr. at 37.) Once the buttons were inside he would sit down at a table and put the stickers on. Several days later his

sister would return, whereupon plaintiff would bring the buttons to the car, and she would return them to Badge.

According to Ms. Rodriguez she averaged 1,000 buttons per hour for which she was paid the minimum wage, but plaintiff could only complete 600–700 buttons per hour, thus he earned less than she did. Plaintiff earned varying amounts as a button assembler ranging from $3,000 to $7,400 per year. Plaintiff said that it "took maybe forty hours per week to pin them things" for which he earned "about $90." (Tr. at 41.)

There was conflicting testimony concerning why plaintiff stopped working at Badge. Plaintiff said that it was because he earned such a small amount of money; but another of his sisters, Rosemary Schaefer, testified that he was fired because his vision problems prevented him from doing the job.

With respect to his health, plaintiff testified that surgery had corrected much of his eye problems, but that other problems prevented him from working. He testified that daily lower back pain prevented most lifting, and that pain in his feet and heels impaired his ability to walk. He also said that he had pain in his right shoulder that may have been caused by several falls. He testified that he could lift ten pounds with his left hand but nothing with his right. He testified that he was a diabetic for which he took medication and that he struggled with his weight, which was about 250 pounds. He also said that he had cramps in his legs. Plaintiff testified that he lived in a second-floor flat upstairs from his brother and led an inactive life that involved mainly being at home and taking out the dog. Plaintiff's sister, Rosemary Schaefer, testified that plaintiff lacked full

**2.** Badge Parts relocated to Waukesha, Wisconsin, in 1996.

use of his arm, and that his back and feet problems caused him to be inactive.

Robert Verkins testified as a vocational expert ("VE"). He testified that plaintiff's work at Badge was unskilled and sedentary. The ALJ asked the VE several hypothetical questions including whether a worker could perform a bench-work assembly job with the following restraints: The worker was illiterate, could not reach or lift move than ten pounds, could stand or walk for two hours per eight hour work day, could sit for six hours in an eight hour workday, required a sit/stand option every half hour, should engage in only occasional climbing, should not turn at the waist, should not squat or crawl and should only engage in push or pull activities. The VE responded, "I believe such a person could perform the bench-work assembly of the buttons." (Tr. at 68.)

## II. APPLICABLE LEGAL STANDARDS, ALJ DECISION AND PLAINTIFF'S OBJECTIONS

### A. Standard of Review of Magistrate Judge's Recommendation

Where a party timely objects to a recommendation of a magistrate judge, I must review de novo the aspects of the recommendation to which either party has timely objected, 28 U.S.C. § 636(b)(1)(c); *U.S. v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), and may review de novo any other aspects as I see fit, *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). Plaintiff has timely objected, thus I review the magistrate judge's recommendation de novo.

### B. Manner of Proving Disability

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Social Security regulations prescribe a sequential five-step test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this test the ALJ must determine: (1) whether the claimant is presently unemployed; (2) if so, whether the claimant has a severe impairment or combination of impairments; (3) whether any of the claimant's impairments are listed by the Social Security Administration as being so severe as to preclude substantial gainful activity, *see* 20 C.F.R. § 404; (4) if not, whether the claimant possesses the residual functional capacity ("RFC") to perform her past work; and (5) if not, whether the claimant is able to perform any other work in the national economy in light of the claimant's age, education, and work experience. *Rucker v. Chater,* 92 F.3d 492, 494 (7th Cir.1996).

A claimant will automatically be found disabled if she makes the requisite showing at steps one through three. *Henderson v. Apfel,* 179 F.3d 507, 512 n. 3 (7th Cir.1999). If the claimant is unable to satisfy step three, however, she must then demonstrate that she lacks the RFC to perform her prior job(s). *Id.* If she makes this showing, the burden then shifts to the Commissioner to establish that the claimant can engage in some other type of substantial gainful employment. *Id.*

### C. ALJ's Conclusion

The ALJ, Timothy C. Terrill, applied the standard five-step analysis. He found at step one that plaintiff had been unemployed since January 22 1997. At step two he concluded that plaintiff was suffering from diabetes and back pain, thus meeting the threshold severity requirement. At step three the ALJ determined that plaintiff did not have an impairment or combination of impairments listed as disabling in

the Social Security Regulations. At step four he found that plaintiff's subjective complaints of pain were unsupported by evidence and did not preclude his performing his past relevant work as a button assembler at Badge.

### D. Plaintiff's Objections

Plaintiff asserts that the ALJ failed to adequately describe the demands of his former work and assess his present ability to perform such work. Second, plaintiff argues that the ALJ failed to discuss his ability to perform work-related physical and mental activities on a regular and continuing basis. Third, plaintiff contends that the ALJ's evaluation of his testimony was insufficient. Fourth, plaintiff contends that the ALJ failed to make a finding that plaintiff's prior work constituted substantial, gainful employment. Fifth, plaintiff argues that there is no evidence that button-assembler jobs presently exist.

### E. Standard of Review of ALJ Decision

Under § 405(g), a district court may affirm, modify, or reverse an ALJ's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The court must review all the evidence in the record, and such review "must be more than an uncritical rubber stamp." *Delgado,* 782 F.2d at 82 (citation omitted). Nevertheless, the ALJ's findings of fact must be upheld if supported by substantial evidence. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Binion ex rel. Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997). In determining whether substantial evidence exists, the district court must take into account both evidence in support of a conclusion and anything that fairly detracts from its weight. *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 388–89 (7th Cir. 1992).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly. *Richardson v. Perales,* 402 U.S. 389, 399–400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). A federal court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. *Binion,* 108 F.3d at 782. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the ALJ. *Id.* Conclusions of law are not entitled to deference, however, so if the ALJ commits an error of law, such as incorrectly applying legal standards, reversal is required without regard to the volume of evidence in support of the factual findings. *Imani ex rel. Hayes v. Heckler,* 797 F.2d 508, 510 (7th Cir.1986). The ALJ must not only consider the important evidence, but his decision must demonstrate the path of his reasoning; and the evidence must lead logically to his conclusion. *Rohan v. Chater,* 98 F.3d 966, 971 (7th Cir.1996).

The decisions of ALJs are highly regulated by the Commissioner's Regulations and Rulings. The Social Security Rulings (SSRs) do not have the force of law, but are binding on ALJs. 20 C.F.R. § 402.35(b)(1); *Prince v. Sullivan,* 933 F.2d 598, 602 (7th Cir.1991).

### III. DISCUSSION

### A. Adequacy of ALJ's Consideration of Demands of Past Relevant Work and Plaintiff's Ability to Meet Such Demands

██ Plaintiff contends that in determining that he was able to return to his job as a button assembler, the ALJ did not evaluate the specific demands of the job and then assess, in light of the available evidence, plaintiff's ability to meet such demands. To determine whether, at step

four, plaintiff is physically capable of returning to his former job, the ALJ must ascertain the demands of that work in relation to plaintiff's present physical capacities. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir.1984). This is particularly true in cases where, as here, there is evidence that some of plaintiff's impairments are worse than when he was working. *Id.* Having ascertained such information, the ALJ "must list the specific physical requirements of the previous job." *Nolen v. Sullivan,* 939 F.2d 516, 518 (7th Cir.1991). Then, the ALJ must give "careful consideration" to "the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her past relevant work to determine whether the individual can still do that work." SSR 82–62. The ALJ's determination about the claimant's ability to perform his or her past work has "far reaching implications and must be developed and explained fully in the disability decision." *Id.* Therefore, the ALJ must make "every effort ... to secure evidence that resolves the issue [of whether the claimant can perform his or her past work] as clearly and explicitly as circumstances permit." *Id.*

In his decision, the ALJ determined that plaintiff's past relevant work was "as a bench assembler at Badger [sic] Parts." (Tr. at 21.) With respect to the specific requirements of that position and the interaction of plaintiff's impairments with those requirements, the ALJ said the following:

Present and testifying at the hearing was vocational expert, Mr. Robert Verkins. Mr. Verkins was asked to assume a hypothetical worker of advanced age who is illiterate, who cannot reach or lift above the shoulder level with the right upper extremity, who cannot lift more than ten pounds, who cannot stand or walk more than a total of two hours in an eight hour workday or sit more than six hours out of eight, who would require a sit/stand option every one-half hour and has the ability to engage in only occasional climbing. Mr. Verkins offered his opinion that such a hypothetical individual could perform sedentary bench work (button assembly). Mr. Verkins was asked to assume the same limitations as in hypothetical number one with additional restrictions including the inability to turn at the waist or to squat or crawl and the ability to only occasionally engage in push or pull activities. Mr. Verkins offered his opinion that the additional restrictions would not preclude the performance of bench work assembly for buttons, as performed by the claimant.

(Tr. at 19.)

After this statement the ALJ made the following findings:

5.  The claimant has the residual functional capacity to perform work related activities except for work involving sedentary work activities not requiring activities precluded by hypothetical number two in the above rationale.

6.  The claimant's past relevant work as a bench assembler did not require the performance of work with the limitations in finding number five above.

7.  The claimant's impairments do not prevent him from performing his past relevant work.

(Tr. at 21.)

In his discussion and findings, the ALJ does not list or describe the specific physical demands of plaintiff's previous job. Nowhere does he clearly specify what such demands were. Defendant argues that the ALJ's finding number 5 satisfies the requirement set forth in *Strittmatter* and

*Nolen.* However, finding number 5 is virtually unintelligible, and, at most, it enumerates plaintiff's limitations rather than affirmatively listing and describing the demands of his past job. Thus, it does not satisfy the requirements of the Seventh Circuit cases. Further, in finding number 5, the ALJ does no more than restate the VE's answer to one of his hypothetical questions, and the VE's answer also fails to list or describe the demands of plaintiff's past work.

Secondly, in the context of the entire record, the ALJ's discussion and findings indicate that his consideration of the interaction between the physical and mental demands of plaintiff's past work and the limiting effects of his impairments was extremely perfunctory. He did not address a number of questions that were raised at the hearing concerning this interaction and thus failed to comply with the requirement of Ruling 82–62 that he "careful[ly] consider" the interaction, elicit clarifying evidence and fully explain his conclusion.

For example, the ALJ failed to carefully consider the fundamental question of whether plaintiff's past relevant work consisted of bench assembly work at home, or bench assembly work outside the home, or both. The evidence demonstrated that plaintiff had assembled buttons at his home but had not performed such work in any other environment. At the hearing, plaintiff's counsel suggested that there were substantial differences between the demands of working at home and those of working in a more conventional work setting such as a factory, and that, therefore, plaintiff's past relevant work should be considered to be button assembly work at

home not button assembly work in a factory. On this point the VE verified that assembling buttons at home was different from doing the work "in a routine setting."[3] (Tr. at 76.) He stated that the differences included that a person working at home "would be able ... to take breaks ... whenever he would like to," and would not have to work an eight-hour shift. (*Id.*) Additionally, while working at home, plaintiff was not subject to supervision or to any productivity requirements. Notwithstanding these differences, the ALJ appears to have concluded that performing button assembly at home was interchangeable with doing it in a factory, and that plaintiff's past relevant work encompassed both kinds of work. However, the ALJ never directly addressed the issue, made no explicit finding and gave no reasons for his conclusion.

■ Findings 4 and 6, however, suggest that the ALJ considered the work interchangeable. In finding 4 he stated that plaintiff's "past relevant work [was as] ... a bench assembler at Badger [sic] Parts," and in finding 6 he said that plaintiff's "past relevant work [was as] ... a bench assembler." (*Id.*) In view of the evidence in the record that the demands of factory work were different from the demands of working at home and that plaintiff had never worked in a factory (or held any regular, competitive job),[4] the ALJ should have explained the reasoning underlying his conclusion that plaintiff's past relevant work encompassed working in a factory. In reaching a decision, an ALJ is obligated to demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. *Rohan,* 98 F.3d at 971. Here

---

**3.** The VE also testified that from an employer's standpoint working at home was not the usual practice.

**4.** The record indicates that plaintiff had worked at the hardware store where his fa-

ther worked and had also worked as a handyman for a family friend before starting at Badge, but had never obtained competitive employment on his own. (Tr. at 57–58, 172.)

the ALJ neither demonstrated the path of his reasoning nor showed how the evidence logically led to the conclusion. Thus, he failed to carefully consider the issue as required by Ruling 82–62.

█ Even assuming that plaintiff's past relevant work properly encompassed work outside the home, the ALJ nevertheless failed to carefully consider the interaction between plaintiff's impairments and the demands of such work. As previously stated, the ALJ did not list or describe the demands of performing bench assembly work in a factory. At a minimum, however, the evidence showed that such work involved regular hours of work and regularly scheduled breaks. One of the doctors who examined plaintiff, Dr. Spear, stated that plaintiff's ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable number of long rest periods was limited. However, the ALJ gave no consideration to whether the impairment identified by Dr. Spear would have prevented plaintiff from meeting the demands of bench assembly work as performed in a factory. When the ALJ presented hypothetical questions to the VE, he did not include this impairment in any of his questions. A hypothetical question must include all the claimant's impairments to the extent they are supported in the record. *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994).

Another requirement of work outside the home (actually of most work) is some degree of productivity. The ALJ, however, made no inquiry into what kind of productivity requirements would have been imposed on a bench assembler working outside the home. Nor did he consider whether plaintiff could have met such demands. The evidence indicated that plaintiff was an extremely unproductive worker. He assembled only slightly more than half the number of buttons in an hour than his sister did. Plaintiff took so much time to assemble buttons that his rate of pay was about half of the minimum wage. Thus, the evidence clearly raised the question of whether plaintiff could have met even the most minimal productivity demands imposed on a bench assembler working in a non-home setting. However, the ALJ made no effort to explore this issue either.

Rather than eliciting clarifying evidence to determine whether plaintiff could work outside the home, the ALJ mechanically asked the VE whether a hypothetical worker "could perform the bench-work assembly as normally performed [i.e., in a factory] ... and as performed by" plaintiff. (Tr. at 77.) The VE responded, "yes, both." (*Id.*) He gave no explanation of his answer, and the ALJ asked for none replying only, "okay, that's what I wanted to know." (*Id.*) One would have thought that the ALJ would have also wanted to know what evidence the VE relied on in reaching this conclusion. This exchange does little to show that plaintiff could work in a factory and reflects the sort of perfunctory exploration of the issues that the Social Security Rulings are designed to prevent.

Even if the ALJ had limited his definition of plaintiff's past relevant work to bench assembly work at home, the evidence raised several questions about whether plaintiff could have met the demands of such work. These questions were not carefully considered either. One such question was how the product to be assembled would have been transported to plaintiff's apartment. When he worked for Badge, his sister picked up a 200–pound barrel of buttons from Badge in her station-wagon and brought it to plaintiff's house. When plaintiff had assembled the buttons, she picked them up and returned them to Badge. Thus, her assistance was essential to plaintiff's work, raising the question of whether he could perform it

without her, and, if not, whether her assistance remained available. *See* 20 C.F.R. § 404.1573(c) (providing that where work is done under special conditions the work may not demonstrate an ability to do substantial gainful activity). The ALJ, however, did not inquire about, much less carefully consider these questions.

A related question was whether plaintiff was able to move the buttons from a car to his second-floor flat. When he worked for Badge, he and his sister rolled the barrels out of the station-wagon where he put the buttons in bags so that he could carry them into his house. However, since he had last worked, plaintiff had developed back problems and could only lift ten pounds. He also complained of foot and heel pain, which caused him difficulty in walking. At the hearing, his counsel argued that with his lifting limitation, he would have had to make twenty trips up and down the stairs to transport the 200 pounds of buttons from the street to his apartment, and that his impairments precluded this activity. The ALJ responded, "I guess that's a decision for me to make." (Tr. at 71.) However, he failed to mention the issue again, much less provide a reasoned resolution of it.

Thus, in a number of respects the ALJ did not, as required by Ruling 82–62, carefully consider the interaction between the physical and mental demands of plaintiff's past relevant work and the limiting effects of his impairments. The ALJ did not carefully consider whether plaintiff's past relevant work was bench assembly at home or in a factory and whether plaintiff could meet the demands particular to either situation. Thus, this case must be remanded.

**B. Other Issues**

Plaintiff raises several other objections some of which are closely related to those already discussed. I will briefly address these claims.

### 1. Adequacy of ALJ's Discussion of Plaintiff's Ability to Perform Regular Work

■ Plaintiff argues that the ALJ did not comply with Ruling 96–8p, which requires that the "RFC assessment ... include a discussion of the individual's abilities to do sustained work-related physical and mental activities on a regular and continuing basis," SSR 96–8p. A " 'regular and continuing basis' means 8 hours a day, 5 days a week or an equivalent work schedule." *Id.* For reasons already stated, I agree. The ALJ did not discuss whether plaintiff could have met the demands of a full-time, competitive job in a normal work setting, given that plaintiff had never held such a job. Defendant suggests that no discussion was required because plaintiff's statement that it "took him maybe 40 hours a week to, to pin them things [the buttons]" (Tr. at 41), was an acknowledgment that he could meet such demands. However, as I have discussed, working forty hours a week at home is different from doing so in a factory. Plaintiff's remark did not absolve the ALJ of his obligation to discuss the issue.

### 2. Adequacy of ALJ's Evaluation of Plaintiff's Credibility

■ Plaintiff argues that the ALJ did not properly evaluate or make a finding with respect to plaintiff's credibility. Plaintiff testified that he was disabled based on a combination of physical problems including daily lower back pain, pain in his feet and heels, which interfered with walking, pain in his right shoulder, leg cramps and diabetes. The ALJ did not explicitly find plaintiff to be incredible, but did so impliedly (and inartfully), concluding that his "subjective complaints, including pain are unsupported by the record to

the extent that such allegations reflect an inability to perform his past relevant work as a bench assembler at Badger [sic] Parts." (Tr. at 21.)

■ Under Ruling 96–7p, the ALJ's determination regarding a claimant's credibility

must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p. It is not sufficient under this ruling for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* The ALJ must build an accurate and logical bridge from the evidence to the conclusion. *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996). Thus, the ALJ was required to state which of plaintiff's complaints he rejected and why such complaints were unsupported by the record. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000).

The ALJ, however, did not meet these requirements. It is impossible to determine from his conclusory statement that plaintiff's complaints were unsupported by the record whether he rejected some or all of plaintiff's testimony and why. For example, one of the questions raised by the evidence was whether, if plaintiff attempted to work at home as he had in the past, his foot and heel pain would have prevented him from making the twenty trips up and down the stairs necessary to move the buttons from the car to his flat. The answer to this question depended largely the ALJ's assessment of the credibility of plaintiff's complaint regarding his ability to walk. However, the ALJ made no finding as to the credibility of the complaint

and in fact did not discuss it at all. This assessment is insufficient.

### 3. Whether Plaintiff's Past Relevant Work Constituted Substantial Gainful Employment

■ A claimant's request for benefits may be denied based on his ability to perform past work only if such work constituted substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1571; SSR 86–8; *Lauer v. Bowen,* 818 F.2d 636, 641 (7th Cir.1987). SGA is work that involves substantive productive physical or mental duties performed for pay. 20 C.F.R. § 404.1572. "[A] finding of SGA will not be made if there is a reasonable explanation as to why an employee's earnings are not substantial." SSR 83–33. Plaintiff argues that because he was such an unproductive piece worker, earning only slightly more than half of the minimum wage, his work cannot be fairly characterized as substantial.

■ In evaluating an employee's work activity for SGA purposes, the primary consideration is "earnings" derived from such services. *Id.* While plaintiff appears to have received enough income for his work to be considered SGA, the income guidelines provided in the regulations create only a presumption of SGA and do not relieve an ALJ of the duty to fully develop the record. *Dugan v. Sullivan,* 957 F.2d 1384, 1390 (7th Cir.1992). Further, the regulations specify that where work is done under special conditions, it might not qualify as SGA. Examples of such special conditions are:

(1) You required and received special assistance from other employees in performing your work;

(2) You were allowed to work irregular hours or take frequent rest periods;

(3) You were provided with special equipment or were assigned work especially suited to your impairment;

(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

At the hearing, plaintiff's counsel argued that one or more of the special conditions were presented and that they warranted a finding that plaintiff's past work was not SGA. As previously discussed, the record contains evidence that, to some extent, one or more of the above conditions was present. For example, plaintiff received substantial help from a co-employee, his sister, and he worked at a substantially lower level of productivity than she did. However, the ALJ did not discuss the issue and made no reasoned determination as to whether plaintiff's past relevant work was SGA.

### 4. Existence of Button–Assembly Jobs

Plaintiff argues that the ALJ erred by failing to address his arguments that there was no evidence in the record that a job of the type plaintiff performed actually existed. However, if plaintiff was physically capable of doing the type of work he did in the past, he cannot be found to be disabled whether or not he could actually find such a job. *Strittmatter*, 729 F.2d at 509. Thus, under Seventh Circuit case law, the ALJ was not required to determine whether plaintiff's past relevant work existed.

Plaintiff also argues that the VE's testimony regarding the qualifications required for bench-assembly jobs conflicts with information in the Dictionary of Occupational Titles and that, under Ruling 00–4p published December 4, 2000, the ALJ was obligated to resolve this conflict. SSR 00–4p; 65 Fed.Reg. 75, 759, 75, 761 (Dec. 4, 2000). However, this argument fails because it is not clear that a conflict exists. None was called to the ALJ's attention at the hearing; and the ruling does not apply where, as here, the hearing was held before the ruling was published, SSR 00–4p ("[t]he clarified standard stated in this ruling . . . applies . . . to all claims for disability benefits in which a hearing before an ALJ has not yet been held").

### IV. CONCLUSION

For the reasons stated, I decline to follow the recommendation of the magistrate judge; and

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge is **REVERSED** and **REMANDED** to the Social Security Administration for action consistent with this opinion.