In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-1121

ERICA A. MANDRELL,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:19-cv-0189-DML-SEB — **Debra McVicker Lynch**, *Magistrate Judge.*

———————————

ARGUED OCTOBER 27, 2021 — DECIDED FEBRUARY 8, 2022

———————————

Before MANION, WOOD, and BRENNAN, *Circuit Judges.*

WOOD, *Circuit Judge.* Erica Mandrell chose to serve her
country in the United States Coast Guard. Unfortunately, that
experience left her emotionally scarred and suffering from
post-traumatic stress disorder (PTSD), after a fellow service-
member raped her. This appeal concerns her efforts to obtain
disability benefits under the Social Security Act. She was un-
successful both before the Social Security Administration and

in the district court, but we conclude that the administrative law judge failed to connect the residual functional capacity he found with the evidence in the record, and he did not adequately account for her deficits in concentration, persistence, and pace. We therefore remand this case to the agency for further proceedings.

**I**

Mandrell was born in 1981; she pursued her education through one year in college. From November 2005 until January 2009, she served in the Coast Guard, which she left with an honorable discharge. Regrettably, while in service she was the victim of a rape by a fellow servicemember. The details of this incident are not pertinent to this appeal, but it is undisputed that she developed PTSD and anxiety afterwards. At some point between 2010 and 2014, the Department of Veterans Affairs found her to be 100% disabled based on a service-related cause, and it awarded benefits to her. It later revised her level of disability down to 70%. Despite this favorable ruling from the VA, when Mandrell applied for Social Security disability benefits in November 2017, ultimately claiming coverage only for the period from October 1, 2015, to March 31, 2016, her request was denied.

After the state agency denied her claim, Mandrell (represented by counsel) appeared and testified at a hearing before Administrative Law Judge Pickett. The only other person to testify was a vocational expert; the remainder of the evidence was submitted in written form. Because of the insured-status requirements imposed by the Act, 42 U.S.C. §§ 416(i)(3), 423(c)(1)(B), Mandrell had to prove that she became disabled before March 31, 2016, her "date last insured." The ALJ denied her claim, and the Appeals Council denied her request for

review. As permitted by 42 U.S.C. § 405(g), she sought review in the district court, but it found no error and affirmed the ALJ's decision. On appeal from that decision, our standard of review is essentially the same as the district court's: we must affirm if the agency's findings are supported by substantial evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019), and there is no legal error, see *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

## II

The Social Security Administration uses a five-step sequential process for disability-benefit cases. Step 1 asks whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). If no, then the ALJ moves to Step 2, which addresses the question whether the claimant has a medically determinable impairment, or a series of impairments, that are severe. 20 C.F.R. § 404.1520(c). If yes, then the question at Step 3 is whether that impairment appears on a list that the agency keeps, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment appears on the list, then benefits are due. If not, the ALJ pauses to determine the claimant's residual functional capacity (RFC), defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations. 20 C.F.R. § 404.1545(a). The RFC drives the determinations at Steps 4 and 5. At Step 4, the ALJ must see if the claimant is still capable of performing her past relevant work, given her RFC. If yes, then benefits must be denied. If no, the ALJ proceeds to the final step and determines, usually with the help of a vocational expert, whether there is any work in the national economy she can perform. Again, if yes, then the ALJ will deny the application; if no, the claimant prevails. For purposes of Steps

1 to 4, the claimant bears the burden of proof; only at Step 5 does it shift to the agency. See *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

Following this approach, the ALJ concluded that Mandrell was not disabled. He did so even though he acknowledged that she had severe mental impairments through her date last insured—in particular, PTSD along with anxiety and depressive disorders. In the course of finding for purposes of Step 3 that these problems did not meet the criteria of any listed impairment, he noted the opinion of the VA's psychologist, Dr. Jennifer Kaladow. Dr. Kaladow submitted a report dated October 6, 2015, in which she stated that Mandrell had marked limitations in her ability to interact with others and in her ability to concentrate, adapt, and manage herself. The ALJ gave little weight to that report, both because he found an inconsistency in the way it described Mandrell's ability to concentrate, and because Dr. Kaladow (in his view) relied too heavily on Mandrell's self-reporting.

Instead, the ALJ found that Mandrell was moderately limited in her interaction with others. In rejecting a finding that her impairments reached the "severe" level for this purpose, he explained that he found certain parts of her testimony to be contradictory. For example, he saw tension between her statements that she did not get out of the house much and that she did not like being around men, and her testimony that she enjoyed martial-arts training. In order to participate in the martial-arts class, she had to get out of the house, and (for reasons that went unexplained) the ALJ apparently thought that men would have been involved in that activity. The ALJ also found that Mandrell was only moderately limited with respect to concentration, persistence, and pace, because she was

able to play online computer games and to read survival books. He noted that she reported that she did not bathe regularly, but that the psychologist noted that her hygiene was "adequate."

After discussing the evidence, the ALJ concluded that Mandrell had the following RFC:

> … [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work … except able to understand and carry out simple instructions; respond appropriately to supervision and coworkers in usual work situations; deal with changes in a routine work setting; no working with the public; only occasional interaction with coworkers and supervisors; in a low stress setting that involves no strict production rate, quotas, or public contact.

The ALJ accompanied this with the common, but regrettably Delphic, observation that he found that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects" of her symptoms as of her date last insured were "not *entirely* consistent with the medical evidence and other evidence in the record … ." (Emphasis added.)

It appears that the ALJ's primary concern was with the severity of the problems Mandrell described, not their existence. Although she reported that she largely stays at home and that she becomes quite anxious in the presence of men or certain odors, he thought that her psychiatrist's observation that during office visits she was cooperative, calm, and oriented, and that she displayed a euthymic (*i.e.*, relatively stable) mood

and a "stable and congruent" affect tended to show that the anxiety was not too severe. In addition, he could not reconcile her remark that she had been in outpatient counseling in 2016 with a comment made two years later by a social worker that the latter found no history of counseling. At the same time, he seemed to have accepted Dr. Kaladow's report that Mandrell began mental-health treatment but that she failed to follow through.

Mandrell presented Dr. Robert Woolley as a medical source. He stated that she was unable to work and that despite her involvement in "individual psychotherapy," her anxiety "continue[d] to be at a severe level" with "no significant improvement in symptom control." The ALJ disregarded this statement because the doctor mentioned ability to work, which is an issue reserved for the agency. He also found it unpersuasive because, as just noted, Mandrell had "minimal involvement" in counseling. Moreover, on the ground that the VA's finding of disability was based on standards that differed from those used by the Social Security Administration, the ALJ gave no weight to the VA's determination.

In the end, the ALJ found that Mandrell's mental impairments were severe. He also accepted Dr. Woolley's diagnosis of guarded and hypervigilant behavior. Nevertheless, the judge concluded, her severe impairments did not support "broad, pervasive, disabling" limitations on her ability to work. On that basis, he found at Step 4 that Mandrell could no longer perform her past relevant work as a military police officer or gate guard. For purposes of Step 5, however, he accepted the vocational expert's testimony that she could perform some jobs at the medium exertional level, including linen-room attendant, hospital housekeeper, and automobile

detailer. He therefore denied her application for benefits, and the Appeals Council let that decision stand.

Magistrate Judge Lynch, acting with the consent of both parties, 28 U.S.C. § 636(c), affirmed the Commissioner's rejection of benefits. This appeal followed.

## III

Mandrell raises two principal arguments in her brief: first, that the ALJ overstepped his bounds by making medical judgments for which he was unqualified and then using those judgments as a basis for his ruling; and second, that he failed to account for the moderate limitations in concentration, persistence, and pace from which, he had found, Mandrell suffered.

We agree with Mandrell that the ALJ did not adequately explain why he disregarded substantial portions of the medical testimony in the record, and that some of the explanations he did offer strayed beyond his expertise as an adjudicator and into the forbidden territory of "play[ing] doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The judge appears to have accepted the fact that Mandrell suffered from PTSD as a result of the rape, but he then dismissed most of the symptoms that accompanied that condition. For instance, he largely disregarded the physiological effects that accompanied her PTSD—effects that included a racing heart, tension, sleep disturbances, and nausea. Her behavior also reflected her disorder: she did not want to be around other people, especially men; she slept with a gun on her nightstand; and she kept her door bolted. And the ALJ did not explain why someone suffering from a mental illness such as PTSD should be expected to behave rationally with respect to counseling

appointments, when (as Mandrell repeatedly testified) she found it difficult to get out and interact with others. Evidence in the record of the medications she was taking (at different times and in different combinations, Prozac, Lexapro, Fluoxetine, Prazosin, Zolpidem, Tartrate, and Clonazepam) also corroborated the severity of her problems. On top of those, she self-medicated with alcohol and marijuana. And her affect was tearful during a visit with Dr. Kaladow.

During the hearing before the ALJ, Mandrell reported that she was still haunted by the face of the rapist. As she was testifying, she felt a panic attack coming on, and so a break in the proceedings was necessary. When the ALJ later asked her what types of things she found stressful in a work setting, she listed men, certain smells, and staring or glares.

The vocational expert provided testimony about the pool of jobs that would be available to a person with limitations specified in the ALJ's hypotheticals, but the testimony was only as good as the hypotheticals—and they failed to capture the full picture. None of the ALJ's hypotheticals envisioned a workplace free of men, undoubtedly because it is quite unlikely that excluding men from a workplace is an option, given the employment discrimination laws. Nor did the hypotheticals grapple with some of the medical evidence that Mandrell put in the record and insists should have been considered.

This points to another troubling aspect of this case. The ALJ was critical of many of the medical records Mandrell did submit because they pertained to periods after her date last insured. In response to that concern, Mandrell supplied additional VA records that included reports of mental-health treatment before that critical date, in early to mid-2016. She argues

that the ALJ erred by failing to recruit a medical expert to evaluate those records for purposes of the decision on RFC. The district court found no abuse of discretion on the ALJ's part in this respect, but it is striking that these records are consistent with Mandrell's own account of her limitations. Even if further expert review of the records was properly denied, however, we are convinced that the ALJ did not adequately connect the dots between the RFC he found and the deficits that he also acknowledged.

For example, we do not see how the ALJ's RFC adequately captures what Mandrell could—and more to the point, could not—do in light of her severe PTSD and other psychological conditions. He did not explain how a person with her problems in concentration, persistence, and pace could perform at the level described in his RFC. The record is full of evidence indicating that she could not concentrate because of the paralyzing effect of the memory of the rape; indeed, she even had a panic attack in the middle of the hearing when she was being asked to revisit that event. The fact that she had some good days and some bad days, as we have noted in other cases, in no way undermines her showing of disability. On some days she encounters reminders of her trauma, and on other days she is more fortunate. The ALJ did not adequately reconcile this evidence with his ultimate conclusion.

Just as troublesome is the ALJ's failure to reconcile his own apparently contradictory findings. There is no reason we can see to silo off the finding at Step 3 that "the claimant has a severe mental impairment as of October 2015" from the limitations that he found, even assuming that her mental impairment fell short of satisfying anything that appeared on the agency's list. And the RFC says nothing at all about the

triggering effect being around men had on Mandrell, even though the reason for that reaction is plain. Neither the ALJ (in his RFC) nor the vocational expert took that problem into account. And the fact that Mandrell was able to make it through one psychiatrist's appointment with a calm affect says nothing. She may well have found that to be a safe environment, unlike the world at large or a workplace. Finally, even though the Social Security Administration is not bound by the VA's assessment of Mandrell's disability, the underlying medical evidence on which the VA relied is just as relevant to the social-security determination as it was to the VA.

## IV

In short, there is too much in this record that cannot be reconciled with the ALJ's ultimate conclusion. As we have written before, "[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009), citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000), and *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). As we did in *Myles*, we conclude here that "[i]n light of the ALJ's questionable credibility findings, cursory analysis of symptoms, improper medical determination regarding medication, and selective discussion of the evidence, his determination that [the claimant] is not disabled is not supported by substantial evidence." 582 F.3d at 678.

We therefore REVERSE the judgment of the district court with instructions to REMAND the case to the Social Security Administration for further proceedings consistent with this opinion.