In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 21-2641

TIFFANY POOLE,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cv-01336-JRS-DLP — **James R. Sweeney II**, *Judge.*

———————————

ARGUED FEBRUARY 15, 2022 — DECIDED MARCH 14, 2022

———————————

Before WOOD, HAMILTON, and BRENNAN, *Circuit Judges.*

WOOD, *Circuit Judge.* Tiffany Poole suffers from severe
back pain that flares up whenever she walks or sits for longer
than about 15 minutes at a time. She applied for Supplemental
Security Income (SSI) benefits, but the Social Security Admin-
istration determined that she did not meet the definition of
disability found in the Social Security Act, 42 U.S.C. § 423(d).
The Appeals Council declined review and the district court

affirmed the agency's decision. We conclude, however, that the ALJ's decision rested on two contradictory findings, and so we reverse and remand this case to the agency for further proceedings.

**I**

Poole has a degenerative disc disease of the lumbar spine; it causes her severe pain in her lower back and right leg after she either stands or sits for a brief time. She lost her last job as a cashier because her pain made it impossible for her to stand throughout her full shift. Poole also suffers from a learning disability, anxiety, and depression, all of which impair her ability to concentrate, understand, or remember detailed instructions. Now 46 years old, she has only a "marginal education," meaning sixth grade or less.

Poole filed a Title XVI application for SSI benefits in May 2016. These payments are modest—as of January 2022, the average federal SSI payment was just $625 per month. See *Monthly Statistical Snapshot, January 2022*, Soc. Sec. Admin., https://www.ssa.gov/policy/docs/quickfacts/stat_snapshot/2022-01.pdf. Nonetheless, they can be a lifeline for people who are unable to work. After the agency denied Poole's claims in 2016, she requested and received a hearing before an Administrative Law Judge (ALJ) in January 2019. (During this hearing, Poole amended the alleged onset date of her disability to May 3, 2016, her protective filing date for SSI, and the ALJ dismissed her companion application for Title II disability insurance benefits.) Applying the five-step inquiry required by 20 C.F.R. § 416.920, the ALJ denied her claim. Poole sought review in the district court, 42 U.S.C. § 405(g), but it affirmed the ALJ's decision.

Because the Appeals Council declined to review Poole's claim, we review the ALJ's decision as the Administration's final word. See *Clifford v. Apfel*, 227 F.3d 863, 865 (7th Cir. 2000). On appeal, we look only to see if the agency's factual findings were supported by substantial evidence, 42 U.S.C. § 405(g); in contrast, we assess the ALJ's legal conclusions *de novo*, *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

## II

The Social Security Administration uses a five-step process to evaluate whether someone is eligible for SSI benefits. See 20 C.F.R. § 404.1520(a). At step one, the ALJ asks whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If no, then step two asks whether the claimant has a severe mental or physical impairment. 20 C.F.R. 404.1520(a)(4)(ii). If yes, then at Step three the ALJ decides whether the claimant's condition "meets or equals" the severity of one or more impairments listed at 20 C.F.R. Part 404, Sub-part P, Appendix 1. If a claimant's impairment matches or is equivalent to something on the list, then she qualifies for benefits without further ado. 20 C.F.R. § 404.1520(a)(4)(iii). If no listing applies, then before proceeding to step four, the ALJ must ascertain the claimant's "residual functional capacity" (RFC)—the maximum work that someone seeking benefits can sustain doing in light of their impairments. 20 C.F.R. § 404.1520(e). With the benefit of the RFC, the ALJ moves to step four, which requires the ALJ to deny benefits if a claimant with the described RFC is capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ moves to step five, where the judge must decide whether there are a "significant number of jobs in the national economy" that a claimant could

perform, given her impairments, age, education, and work experience. See *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022); see also 20 C.F.R. § 404.1520(g). The claimant bears the burden of proof on steps one through four; it shifts to the Commissioner for step five.

The ALJ followed this script and determined that Poole was not disabled. She found that Poole had not engaged in substantial gainful activity during the period for which she was claiming benefits (step one), that Poole had several severe impairments (step two), and that Poole's conditions did not presumptively establish a disability (step three). The ALJ then defined Poole's RFC, beginning with the conclusion that Poole was limited to a range of sedentary work as defined in 20 C.F.R. § 404.1567(a). But because Poole also suffers from pain if she sits for too long, the ALJ found, she would need to "change positions every fifteen minutes from sitting to standing and back again, *four hours each in an eight-hour workday*." (Emphasis added.) The judge also accepted that Poole's learning impairments left her with moderate limitations in her ability to concentrate and to remember complex instructions. These restrictions narrowed Poole's options to sedentary jobs involving only simple, routine work.

At the fifth and final step of the inquiry, the ALJ decided that there are a sufficient number of jobs in the national economy that someone with Poole's RFC could perform to warrant a finding of no disability. As is common, the ALJ relied at this stage on testimony from a vocational expert, who in turn consulted the Department of Labor's *Directory of Occupational Titles* (DOT), a document that was most recently updated in 1991. See https://www.dol.gov/agencies/oalj/topics/libraries/

LIBDOT. It describes over 12,000 jobs in the United States economy and categorizes each one by the amount of physical exertion they require. Needless to say, the fact that the DOT was last revised before the Internet revolution means that it is a resource that must be used with care. Recognizing that the DOT is increasingly out of step with the modern economy, the Social Security Administration has been planning for years to replace it, but those plans have not yet come to fruition. See *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018).

The interim solution has been increased reliance on the testimony of vocational experts, although the Social Security Administration still insists that such an expert must begin with the DOT and explain any conflicts between that document and her own testimony. See S.S.R. 00–4p, 2000 WL 1898704 (Dec. 4, 2000). That is what the vocational expert did here. Relying on both the DOT and her own professional experience, she testified that there were hundreds of thousands of jobs in the national economy that could be performed by a hypothetical person with the restrictions noted in Poole's RFC. Those jobs, the expert stated, could be performed by a worker who needed to alternate between sitting and standing at her workstation every fifteen minutes, all day long. The agency accordingly denied Poole's application for benefits.

### III

Poole raises two principal arguments in her brief. First, she contends that the ALJ's finding that she was limited to sedentary work is at odds with the ALJ's finding that she is able to alternate between sitting and standing all day long, and thus in the aggregate sit and stand for "four hours each" in an eight-hour workday. Second, she argues that the ALJ's decision was not supported by the vocational expert's testimony.

A

The Social Security Administration sorts jobs into five physical exertion categories: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. The agency's regulations set a firm ceiling for the amount of exertion needed for a job in a given category. For example, a light-work job "involves lifting *no more than* 20 pounds at a time." *Id*. § 404.1567(d) (emphasis added). In any case that moves beyond step three of the sequential process we described earlier, the RFC ascertained by the ALJ must specify the highest exertional level the claimant is able to sustain. The RFC represents "the *most* physical and mental work a claimant can do on a sustained basis despite her limitations." *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)) (emphasis added). Thus, when an ALJ finds that a claimant is limited to sedentary work, the ALJ has found that "the maximum" of which a claimant is capable is the level set by the regulations. See *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

When we turn to those regulations, we see that "sedentary" jobs may involve lifting no more than 10 pounds and no more than two hours of standing or walking per day. See 20 C.F.R. § 404.1567 ("Jobs are sedentary if walking and standing are required occasionally[.]"); S.S.R. 83–10, 1983 WL 31251 (Jan. 1, 1983) (defining "occasionally" as "no more than two hours in an eight-hour workday"); see also *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018). Thus, when the ALJ determined that Poole had a sedentary RFC, she necessarily found that Poole is not able to stand or walk for more than two hours a day. Yet the ALJ immediately deviated from that finding when she described Poole's RFC. Instead, the ALJ

wrote that Poole could alternate all day long between sitting and standing every 15 minutes. Over the course of the work-day, that adds up to only four hours per day of sitting; she would have to stand for the other four hours.

We have no way of reconciling these contradictory find-ings. Either Poole can stand for four hours a day, and thus should have been put in the "light" exertional level, or the ALJ correctly found that she belonged in the "sedentary" category and thus could stand (or walk) at most for two hours a day. Notably, the ALJ never said that Poole could perform seden-tary work if she could sit or stand at will, and so the vocational expert never focused on that potential set of jobs. When an agency decision is so ambiguous that it frustrates judicial re-view, it cannot be upheld. See *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of re-view requires that the grounds upon which the administra-tive agency acted b[e] clearly disclosed and adequately sus-tained."). Here, we can only speculate about what persuaded the ALJ to rule against Poole. The ALJ's decision therefore falls short of *Chenery*'s command to articulate the grounds clearly and rationally for her decision. See *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). And *Chenery* also forbids the Commissioner from relying at this stage on a rationale that was not used by the agency. *Chenery*, 318 U.S. at 87.

## B

The Commissioner nonetheless argues that this contradic-tion we have identified is at most harmless error. We do not see it that way. First, the agency is, in effect, asking us to re-weigh the evidence, and ignore the ALJ's categorization of Poole as a sedentary worker, which was based on Poole's tes-timony. That is not the role of the court. "We review the

record as a whole, but we are not to reweigh the evidence or substitute our own judgment for that of the ALJ." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Second, the agency concedes that the ALJ's decision would be more "technically correct" if she had stated that Poole was capable of light work, rather than sedentary work, with an additional sit/stand limitation, and it urges us to read the ALJ's decision to say that instead. But the distinction between exertional levels is hardly an incidental part of the RFC determination. This argument reminds us of the adage "be careful what you wish for, lest it come true!"[1] Most of the time, it is the Commissioner who is urging us to respect the ALJ's RFC determination. We strongly doubt that the Social Security Administration wants to substitute a regime in which courts decide for themselves what an ALJ "really" meant and disregard the ALJ's own statements.

It is not uncommon for an ALJ to adopt a particular exertional level and then, with the help of the vocational expert, to rule out certain jobs within that level. See, *e.g.*, *Chavez*, 895 F.3d at 964 ("[T]he ALJ determined that [a claimant] could perform a limited range of light work."); *Haynes*, 416 F.3d at 626 (a claimant could perform "more than the full range of sedentary work, but less than a full range of light work"); *Books v. Chater*, 91 F.3d 972, 976 (7th Cir. 1996) (a claimant was limited to light work jobs that allowed him to sit or stand at will). But this ALJ did not begin with a finding that Poole could do *any* work at the light exertional level. As we have stressed, the ALJ found that Poole was limited to *sedentary*

---

[1] People trace this to Aesop's Fable of *The Old Man and Death*, around 260 BCE. See https://fablesofaesop.com/the-old-man-and-death.html.

work with additional limitations. The ALJ's choice of exertional level is among the most important aspects of the RFC, and thus the decision to grant or deny benefits. While courts should not nitpick ALJ decisions "in quest of a perfect opinion," *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), we cannot rewrite the record as though the ALJ's central factual finding was a typo. Again, the *Chenery* principle requires more. We must "confine our review to the reasons supplied by the ALJ," rather than allowing the government to invent new findings to rescue an insufficient decision on appeal. See *Steele*, 290 F.3d at 941 (citing *Chenery*, 318 U.S. at 93–95).

## IV

In light of this conclusion, we have no need to reach Poole's alternate argument, which is that the ALJ's decision does not follow from the vocational expert's responses to three hypotheticals posed to the expert. By the time we get to the third hypothetical, we again confront the problem that the ALJ was asking the expert to describe jobs that required a higher level of exertion than the agency recognizes for sedentary positions. In response to the second question, which suggested a person who is able to "perform sedentary work" and has moderate limitations related to concentration, the vocational expert replied that a person with those impairments could work as an "Assembler" (DOT 732.684-062), with over 130,000 jobs nationally; a "Packer" (DOT 737.587-010), with over 215,000 jobs nationally; or a "Sorter" (DOT 669.687-014), with over 98,000 jobs nationally. But in the third hypothetical, the ALJ combined the sedentary exertional level with the ability to stand for half the day, and we already have explained why that was not permissible.

**V**

We cannot reconcile the ALJ's finding that Poole *cannot* stand for more than two hours in a workday with her finding that Poole *must* stand for four hours in a workday. We therefore REVERSE the judgment of the district court with instructions to REMAND the case to the Social Security Administration for further proceedings consistent with this opinion.