In the

# United States Court of Appeals

### For the Seventh Circuit

No. 24-2014

DENNIS JONES,

*Plaintiff-Appellant,*

*v.*

LELAND DUDEK, Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 1:22-cv-01580 — **Gabriel A. Fuentes,** *Magistrate Judge.*

ARGUED FEBRUARY 26, 2025 — DECIDED APRIL 21, 2025

Before ROVNER, SCUDDER, and KOLAR, *Circuit Judges.*

SCUDDER, *Circuit Judge.* This appeal of the denial of Social Security benefits presents a challenging question about how to apply the Social Security Administration's 2017 revision to the regulatory definition of a "medical opinion." In particular, we must distinguish between the new regulatory definitions of medical opinion evidence and other medical evidence. The distinction matters, as it determines how an administrative

law judge must evaluate the evidence in adjudicating a claim for benefits.

In the case before us, Dennis Jones contends that an ALJ erred by not treating certain evidence—a statement from a medical examiner—as a medical opinion. We agree with Jones that the medical examiner's statement was a medical opinion. Ultimately, though, the ALJ was under no obligation to evaluate the statement for its persuasiveness because the medical examiner opined on an issue reserved to the Commissioner of Social Security. That leaves us to affirm.

**I**

**A**

Under the Social Security Act, the Social Security Administration may not award benefits unless a claimant submits "medical and other evidence" of disability. 42 U.S.C. § 423(d)(5)(A); see *id.* § 1382c(a)(3)(H)(i). Not all evidence that a claimant submits receives equal weight. For instance, a claimant's own statements "as to pain or other symptoms" are not, on their own, "conclusive evidence of disability." *Id.* § 423(d)(5)(A); see *id.* § 1382c(a)(3)(H)(i). Instead, evidence of disability must include "medical signs and findings, established by medically acceptable" techniques. *Id.* § 423(d)(5)(A); see *id.* § 1382c(a)(3)(H)(i).

Consistent with those statutory provisions, the Social Security Administration's regulations have long sorted evidence of disability into different categories. See 20 C.F.R. §§ 404.1512(b), 416.912(b) (2006) (amended 2010, 2011, 2012, 2014, 2015, and 2017). Those categories are significant because they dictate how an ALJ should evaluate the evidence a

claimant submits in support of an application for benefits. See 20 C.F.R. §§ 404.1520c, 404.1527, 416.920c, 416.927 (2017).

Before 2017, the regulations distinguished between "[o]bjective medical evidence" and "[o]ther evidence from medical sources." 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) (2015) (amended 2017). "Objective medical evidence" included "medical signs and laboratory findings," while "[o]ther evidence from medical sources" included "medical history, opinions, and statements about treatment." *Id.* The subcategory of medical opinion evidence was particularly significant because the regulations required ALJs to "evaluate *every* medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012) (amended 2017) (emphasis added). The regulations defined a medical opinion to include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." *Id.* §§ 404.1527(a)(2), 416.927(a)(2).

Eventually, however, the Social Security Administration became of the view that "a narrower definition of medical opinions would improve [the] adjudicative process." 81 Fed. Reg. 62562 (Sept. 9, 2016). The Administration sought to exclude "[d]iagnoses and prognoses" from the definition of medical opinions because that information did not "describe how an individual functions." *Id.* "A more appropriate focus," the Administration determined, would be "perspectives from medical sources about claimants' functional abilities and limitations." *Id.*

In line with that explanation, the Administration revised its regulations in 2017. Though the regulations continue to define "[o]bjective medical evidence" as "medical signs" and "laboratory findings," they now differentiate between "[m]edical opinion" evidence and "[o]ther medical evidence." 20 C.F.R. §§ 404.1513(a), 416.913(a). The regulations now define a "medical opinion" this way:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)    Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)    Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* § 404.1513(a)(2)(i)–(iv); see *id.* § 416.913(a)(2)(i)(A)–(D).

Notice that the new definition of "medical opinion" no longer includes judgments about the nature and severity of a claimant's impairments. See *id* § 404.1513(a)(2)(i)–(iv); see *id.* § 416.913(a)(2)(i)(A)–(D). Those judgments are now housed within the definition of "[o]ther medical evidence":

> Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, *including judgments about the nature and severity of your impairments*, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis ….

*Id.* §§ 404.1513(a)(3), 416.913(a)(3) (emphasis added).

When reviewing a claim for benefits, an ALJ must consider "all evidence" in the record, regardless of the evidence's categorization. 42 U.S.C. § 423(d)(5)(B). Yet that obligation does not render the regulatory categorizations a useless sorting device. To the contrary, the new regulations inform and guide by category *how* the ALJ considers medical evidence. And when it comes to a "medical opinion" specifically, an ALJ must "evaluate the persuasiveness" of the opinion for its "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The evaluation also must "articulate" and "explain" how the ALJ "considered the supportability and consistency factors" in her decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

There is an exception, however, to the articulation requirement for statements "on issues reserved to the Commissioner." *Id.* §§ 404.1520b(c)(3), 416.920b(c)(3). The ALJ "will not provide any analysis" of such statements, even if they

come in the form of medical opinions. *Id*. Statements "on issues reserved to the Commissioner" include any statements that "would direct" the ALJ's "determination or decision that you are or are not disabled," including "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work." *Id.*

An ALJ had occasion to apply the new regulations in 2019, after Dennis Jones applied for disability benefits and supplemental security income. How the ALJ applied the new regulations—and differentiated between the different categories of evidence—forms the basis of Jones's appeal.

B

Dennis Jones was born prematurely, causing a cerebral hematoma on the left side of his brain. Now 42-years-old, Jones has worked part-time as a grocery store cashier for over 15 years. According to Jones, his hematoma and other conditions related to his premature birth have worsened over the years, preventing him from working full time. The Social Security Administration disagreed, denying his application for benefits. Jones then requested an administrative hearing.

After conducting a hearing, an ALJ applied the five-step evaluation process set forth under federal regulations to determine whether Jones was disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). As part of that process, she found that Jones had the residual functional capacity (or RFC as it is often called) to perform light work as defined under the Social Security regulations—but subject to several additional limitations, including, for instance, avoiding climbing ladders or operating heavy machinery. See *id.* §§ 404.1567(b), 416.967(b) (defining "[l]ight work").

In explaining her RFC determination, the ALJ referenced, among other evidence, a report from Dr. James Runke, a consultative examiner. Consultative examiners are medical providers who evaluate claimants at the Social Security Administration's request and report their findings back to the agency. See *id.* §§ 404.1519, 416.919. The report from Dr. Runke's consultative examination consisted primarily of observations regarding Jones's physical condition. It noted, for instance, "atrophy of the right arm and leg" along with "limited range of motion of the lumbar spine," "severely impaired fine dexterity," "[m]otor strength weakness," and "discoordination." And at the very end, it provided the following "clinical impression":

> History of congenital right hemiparesis and/or cerebral palsy with associated gait and dexterity impairment and weakness on the right side. Findings and functional limitations are as described above. The claimant does not currently require an assistive device. Progressive pain has been occurring due to associated weight bearing difficulties and joint strain with limitations of current grocery store job to about 20 hours per week maximum. Objective findings are consistent with subjective complaint.

In discussing Dr. Runke's report, the ALJ noted only his observations, omitting any discussion of the "clinical impression."

Ultimately, the ALJ determined that, based on Jones's residual functional capacity to perform light work, he could continue working as a cashier or in certain other jobs. It was

on that basis that the ALJ concluded that Jones was not disabled and therefore not entitled to benefits.

The district court affirmed, and Jones now appeals.

## II

Jones contends that the ALJ failed to apply the correct legal standards in evaluating Dr. Runke's report. In his view, Dr. Runke's "clinical impression" constitutes medical opinion evidence, and the regulations accordingly required the ALJ to evaluate it for its persuasiveness. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The government disagrees, contending that the clinical impression requires no such evaluation because it is either not a medical opinion or a medical opinion on an issue reserved to the Commissioner.

## A

Jones's appeal requires us to distinguish between medical opinion evidence and other medical evidence under the new regulations. The distinction can be difficult because the regulatory definitions for each category overlap in some ways. Start with the definition of a medical opinion, which includes "a statement from a medical source about what you can still do despite your impairment(s)." *Id.* §§ 404.1513(a)(2), 416.913(a)(2). Now consider the definition of other medical evidence. Though that definition technically excludes "a medical opinion," it also encompasses "judgments about the nature and severity of your impairments." *Id.* §§ 404.1513(a)(3), 416.913(a)(3). And it is not hard to conceive of a statement that addresses *both* what a claimant can still do *and* the nature and severity of the claimant's impairments. Indeed, this case provides one such example.

After completing a consultative examination, Dr. Runke filled out a report listing several observations related to Jones's physical condition. He then concluded that report with the following "clinical impression": "Progressive pain has been occurring due to associated weight bearing difficulties and joint strain with limitations of current grocery store job to about 20 hours per week maximum. Objective findings are consistent with subjective complaint." We take that statement to mean one of two things. It could mean that, in Dr. Runke's view, Jones can work no more than 20 hours per week. Or it could mean that, in Dr. Runke's view, Jones's subjective complaint (that the pain and strain he is experiencing confines his work to no more than 20 hours per week) is consistent with Dr. Runke's own objective observations. Either way, the statement reflects Dr. Runke's medical judgment that Jones's condition limited his ability to work more than 20 hours weekly.

But interpreting the meaning of Dr. Runke's statement does not tell us how to categorize it under the regulatory framework. On one hand, the statement addresses what Jones "can still do" despite his impairments—that is, work 20 hours per week. *Id.* §§ 404.1513(a)(2), 416.913(a)(2). On the other, the statement likewise reflects a "judgment[] about the nature and severity" of Jones's impairments—that is, they are severe enough to limit him to 20 hours of work per week. *Id.* §§ 404.1513(a)(3); 416.913(a)(3). Both conclusions are plenty reasonable, and they undoubtedly arose because Dr. Runke works as a physician, not a lawyer. We have no reason to expect the mine-run of physicians to document findings and judgments from medical examinations by applying the framework of Social Security regulations. Doctors will write like

doctors write, leaving legal consequences for lawyers, ALJs, and courts to sort out.

To resolve the confusion here, the Commissioner returns to the full definition of "medical opinion": "[A] statement from a medical source about what you can still do despite your impairment(s) *and* whether you have one or more impairment-related limitations or restrictions." *Id.* §§ 404.1513(a)(2), 416.913(a)(2) (emphasis added). The Commissioner interprets that language narrowly—as requiring medical statements to address *both* what a claimant "can still do" *and* whether the claimant has specific "impairment-related" limitations. *Id.* And, as the Commissioner emphasizes, the very same regulation then identifies four specific categories of "impairment-related limitations or restrictions":

> (i)   Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* § 404.1513(a)(2)(i)–(iv); see *id.* § 416.913(a)(2)(i)(A)–(D).

So, under the Commissioner's interpretation, a statement about what a claimant can still do is not a medical opinion unless the physician frames the statement in terms of the claimant's ability to perform some or all of specific work-related demands itemized in one of the four categories.

Admittedly, the Commissioner's reading of the regulations has some appeal. Indeed, the Tenth Circuit has similarly understood medical opinion evidence to require some sort of evaluation of a claimant's "ability to perform the *specific* demands of work activities." *Staheli v. Comm'r*, 84 F.4th 901, 907 (10th Cir. 2023) (emphasis added). That understanding comports with the Social Security Administration's explanation of its 2017 revision to the definition of "medical opinion"—specifically that "a narrower definition" would "improve [the] adjudicative process" by focusing ALJs on statements that "describe how an individual functions" rather than those that simply list "[d]iagnoses and prognoses." 81 Fed. Reg. 62562 (Sept. 9, 2016).

But the Social Security Administration's stated explanation for its revision, while informative, does not on its own determine the best reading of the regulations. Cf. *Kisor v. Wilkie*, 588 U.S. 558, 581 (2019) (plurality opinion) ("[A] court must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover."). And, having undertaken our own independent review of the regulation's definition of "medical opinion," we read it more broadly than the Commissioner and Tenth

Circuit. We see no requirement that a "medical opinion" limit itself only to statements about whether a claimant can perform specific workplace demands such as sitting, standing, walking, lifting, or carrying. Though such statements clearly fall within the definition of medical opinions, the definition also sweeps more broadly. It expressly defines a medical opinion to include statements about what the claimant "can still do." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Because Dr. Runke's clinical impression that Jones's pain and joint strain allow him to work up to 20 hours per week as a grocery store cashier fits within that definition, we conclude that it constitutes a "medical opinion" within the meaning of the 2017 regulation.

In any event, it is far from clear that the Commissioner's reading (or, for that matter, the Tenth Circuit's) precludes Dr. Runke's clinical impression from qualifying as a medical opinion. Dr. Runke stated that Jones was limited to "about 20 hours per week" of his "current grocery store job" due to "weight bearing difficulties"—a description of Jones's "ability to perform the specific demands of work activities." *Staheli*, 84 F.4th at 907. That statement necessarily indicates that Jones's impairment limited his ability to perform the physical, weight-bearing demands of his cashier position (for instance, standing, lifting, and carrying). Put another way, although we read the regulation's definition of "medical opinion" more broadly than the Commissioner or Tenth Circuit, the distinction is without any difference on the record before us.

B

Our conclusion that Dr. Runke's clinical impression constituted a medical opinion does not end our inquiry. To be sure, ALJs typically must "evaluate the persuasiveness" of all

medical opinions and "articulate" their findings in writing. *Id.* §§ 404.1520c(a), 416.920c(a). But the regulations also tell us that ALJs need not do so for medical opinions concerning "issues reserved to the Commissioner." *Id.* §§ 404.1520b(c)(3), 416.920b(c)(3). As relevant here, the regulations leave it to the Commissioner to determine whether a claimant is "disabled" or "able to perform regular or continuing work." *Id.*

Dr. Runke's statement that Jones cannot work more than 20 hours per week (or that his objective condition was consistent with that complaint) is tantamount to a statement about whether Jones could perform regular work. Indeed, by its very terms, the statement relates Dr. Runke's medical determination that Jones's physical limitations leave him incapable of working a regular, 40-hour-per-week schedule. See SSR 96-9p (explaining that "sustained work on a regular and continuing basis" is work for "8 hours a day, for 5 days a week, or an equivalent work schedule").

Therein lays the legal limitation of Dr. Runke's opinion. His view that Jones was limited to working 20 hours per week was a conclusion on the ultimate question before the ALJ—whether Jones's residual functional capacity allowed him to perform light work on a full-time basis. Only the Commissioner (through the ALJ) could make that final call. As a result, the ALJ had no obligation under the regulations to provide any analysis of Dr. Runke's statement. See 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

Jones begs to differ. He contends that because the ALJ did not identify Dr. Runke's clinical impression as a statement on an issue reserved to the Commissioner, the *Chenery* doctrine prevents us from reaching that conclusion on appeal. We disagree. The *Chenery* doctrine bars the Commissioner "from

relying at this stage on a rationale" that he did not use during the administrative process. See *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Here, however, the regulations specifically exempt ALJs from evaluating certain evidence during the administrative process, on the rationale that such evidence is "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Put differently, the Commissioner is not adopting a new rationale on appeal. Instead, the Commissioner relies upon the Social Security Administration's longstanding rationale for why ALJs do not evaluate evidence of the type that Jones submitted—here, a medical opinion that offered a judgment on the ultimate question of whether he is disabled.

## C

Of course, all this would have been much easier had the ALJ's analysis explained the categorization of the evidence from Dr. Runke. We recognize that, under the regulations, the ALJ had no obligation to do so. Nor are we telling ALJs how they must write their decisions. Yet in close cases like this one—where evidence could reasonably fall under many categories—it helps the reviewing court when an ALJ explains its application of the regulatory framework governing medical evidence. But because the regulations did not require the ALJ to do so here, we AFFIRM.